The State ex rel. Dwinnell vs. Gaylord.

raise the average valuation of the securities of the relator, and did so on sufficient evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

THE STATE EX REL. DWINNELL, Appellant, vs. GAYLORD, Village Clerk, etc., Respondent.

*January 8 — January 29, 1889.*

TAXATION. *(1) Village of Elkhorn: Board of review how constituted. (2) Excusing assessor from voting. (3) Taxable property: Notes, mortgages, etc., in another state.*

1. By statute the inhabitants of the town of Elkhorn were incorporated as the village of Elkhorn, and it was provided that the elective officers of the village (including three supervisors, one assessor, and one clerk) should severally have and exercise all the powers and perform all the duties " prescribed by statute in reference to said several designated officers in the several towns of this state." At that time assessors were the only officers authorized to review assessments, but subsequently boards of review were provided for, which (under sec. 1060, R. S., as amended by ch. 74, Laws of 1881) consisted in towns of the supervisors, clerk, and assessors, and in villages in which taxes were assessed and collected independently consisted of the president, clerk, and assessors.  *Held,* that it was the intention of the act incorporating the village of Elkhorn that the officers of such village should have the powers and perform the duties then prescribed by statute in reference to similar officers in towns, and also such powers and duties as should at any time subsequently be prescribed in reference to such *town officers;* and hence that the board of review in that village should be constituted as such boards are constituted in towns, and not as they are constituted in other villages.

2. A quorum being present and voting, the fact that an assessor was excused from voting does not invalidate the action of a board of review.

3. Moneys, and notes secured by mortgages of land in another state, in the hands of an agent in that state to be loaned, collected, and reloaned, but belonging to a resident of this state, are "property in this state" (sec. 1034, R. S.) and taxable here.

APPEAL from the Circuit Court for *Walworth* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record, in effect, that June 18, 1888, the relator, *George W. Dwinnell*, made out the usual statement of his personal property subject to taxation in the village of Elkhorn in Walworth county, and presented the same to, and verified the same before, George W. Wylie, one of the assessors of said village, wherein he placed in the column headed "Valuation by Owner," and opposite the following words and figures, to wit: "15. Average amount of notes, bonds, mortgages, and other securities for debts due or to become due, for each and every month during the year ending May 1, over and above the average amount of *bona fide* unconditional debts owing for each and every of said months, as determined under sec. 1056, R. S.,"— the sum of "$5,000." Thereupon said assessor placed opposite the same words and figures, and in the column headed "Valuation by Assessor," the sum of "$19,000;" and in the next column, headed "Remarks," the following: "$14,000 added by me for moneys out of the state. GEORGE W. WYLIE, Assessor."

June 26, 1888, the matter of said assessment came before the board of review of said village, legally in session, with all the members of the board present, consisting of John Matheson, Esq., chairman of the board of supervisors; F. W. Isham and H. C. Norris, supervisors; George W. Wylie, assessor of said village; and the said *Charles C. Gaylord*, the clerk of said village,— under and by virtue of ch. 153, P. & L. Laws of 1857, and ch. 133, P. & L. Laws of 1858. Said relator then and there appeared in person

and by his attorney before said board, and objected to such increase of valuation to the amount of $14,000 by the assessor as being wholly unauthorized by law, for the reason that such statement under oath was conclusive; and for the further reason that such increase was unauthorized by the facts; and thereupon offered said sworn statement in evidence. Said assessor thereupon claimed that said $5,000 was too low, and should be increased, and offered to support the same by proofs; and thereupon the board took testimony, and in effect proved that *Dwinnell* admitted that he had and owned $19,000 as such average amount of such property; that he had it in the hands of his son-in-law in Nebraska as broker or agent; that he was not assessed thereon in Nebraska for the previous year, and did not know whether he had been in 1888; that if that property was assessable in Elkhorn at all, then the $19,000 was not too high. Said relator, *Dwinnell*, was thereupon sworn, but did not deny such admissions, but gave evidence tending to show that they were true. He also testified, in effect, that he had passed the money into the hands of said son-in-law, to loan, collect, and reloan for him, and gave him the power of attorney to do his business, and discharge mortgages, to loan, collect, and reloan; that such moneys were sent to said son-in-law to invest, and were in notes held by said agent, whom he paid for looking after such securities and moneys; that he regarded himself as a resident and tax-payer of said village. Thereupon, and at the request of the attorney for the relator, and with his knowledge and consent, the said board adjourned to July 6, 1888, to consider and inform themselves upon their legal duty; and due notice thereof was posted on the town hall, at the post-office, on the Park Hotel, and on the Nickel Plate Hotel, respectively, but no notice thereof was posted on the outer door of the village clerk's office. Verbal notice thereof was given to said relator and his said attorney.

The State ex rel. Dwinnell vs. Gaylord.

Said board again convened July 6, 1888, at the appointed hour, with the said attorney of the relator present, and he was invited by said board to offer further testimony or be heard further on the matter if he wished. The board took some further testimony with his consent, sufficiently stated above. Thereupon said board of review, by unanimous vote (with the exception of said Wylie, the assessor and a witness, who was excused from voting), did decide and fix the amount and valuation of the relator's personal property so described at the sum and amount of $19,000. Thereupon said judgment and proceedings before said board of review were taken to and before the circuit court for Walworth county upon a common-law writ of *certiorari;* and, upon the hearing of said matter by and before said court, it was found by the said court, in effect, that said proceedings of said board were within its jurisdiction, and were regular, and that the said decision of said board was supported both by the law and the sworn testimony and the evidence given before said board; and it was thereupon ordered, adjudged, and decreed by said court that said action of said board in said matter be and was thereby affirmed, and that the same should stand as of full force, with costs. From that judgment of the circuit court the relator appeals.

For the appellant there was a brief signed by *J. F. Lyon & Son,* and the cause was argued orally by *J. F. Lyon* and *Jay F. Lyon.* They contended, *inter alia,* that money, notes, etc., in the hands of an agent in another state to loan, collect in, and reloan, as a permanent business, the agent having full control and management of them, and which are taxable in that other state, are not taxable here. Taxation and protection are reciprocal; and the owner of such property receives no benefit in respect thereto from the laws of this state. *Redmond v. Comm'rs,* 87 N. C. 122; *Mayor v. Baldwin,* 57 Ala. 61, 68; Cooley on Taxation (1st ed.), 14, note 4; *People v. Gardner,* 51 Barb. 358; *Wilkey*

*v. Pekin*, 19 Ill. 160; *Wilcox v. Ellis*, 14 Kan. 588, 603; *Fisher v. Rush Co.* 19 id. 414; *People ex rel. Hoyt v. Comm'rs*, 23 N. Y. 224, 226; *Hutchinson v. Board*, 66 Iowa, 35. In accordance with this principle the state of Nebraska holds the property in question taxable there. *Finch v. York Co.* 19 Neb. 50. And this has been held constitutional. *Tappan v. Merchants' Bank*, 19 Wall. 491, 502. The *situs* of personal property for the purpose of taxation does not follow the domicile of the owner. *Albany v. Meekin*, 3 Ind. 481, 56 Am. Dec. 522; *Alvany v. Powell*, 2 Jones Eq. 51; Burroughs on Taxation, ch. 4; 1 Desty on Taxation, 59, 64; Welty on Assessments, sec. 43; *People ex rel. Hoyt v. Comm'rs*, 23 N. Y. 224; *Fisher v. Rush Co.* 19 Kan. 414; *People v. Niles*, 35 Cal. 282, 285; *St. Louis v. Wiggins Ferry Co.* 40 Mo. 580, 586, 589; *Taylor v. St. Louis Co. Ct.* 47 id. 594, 601; *Curtis v. Ward*, 58 id. 295; *State ex rel. Dunnica v. Howard Co. Ct.* 69 id. 454. That the *situs* in a case like this is at the domicile of the agent, see, also, *Catlin v. Hull*, 21 Vt. 152; *Bullock v. Guilford*, 59 id. 516, 519; *People ex rel. Westbrook v. Trustees*, 48 N. Y. 390; *Culbertson v. Comm'rs*, 52 Ind. 361, 366; *Herron v. Keeran*, 59 id. 472; *Foresman v. Byrns*, 68 id. 247; *Goldgart v. People*, 106 Ill. 25; *People v. Home Ins. Co.* 29 Cal. 534; *In re Jefferson*, 35 Minn. 215; 1 Desty on Taxation, 57; Welty on Assessments, sec. 45; 56 Am. Dec. 530. That the *situs* is not at the domicile of the principal, see, further, *People ex rel. Pacific S. M. Co. v. Comm'rs*, 5 Hun, 200, 64 N. Y. 541; *People v. Comm'rs*, 4 Hun, 595; *People v. Smith*, 88 N. Y. 576; *Hunter v. Board*, 33 Iowa, 376, 379; Browne on Assessment, 408.

Under sec. 1, ch. 133, P. & L. Laws of 1858, it was the intention of the legislature that the officers of the village of Elkhorn should have the same powers and duties and be subject to the same liabilities that similarly designated town officers *at that time* had and were subject to; but that

The State ex rel. Dwinnell vs. Gaylord.

such powers, duties, and liabilities would be modified not by the modification of the powers, duties, and liabilities of similarly designated town officers, but by amendments relating directly to village officers. The provisions relating to villages govern, therefore, as to the composition of the board of review of the village of Elkhorn, and such board should consist of the chairman of the board of supervisors, the village clerk, the assessor, and no others. In this case, in increasing the valuation, the board was composed of but two members, and allowed two outsiders to participate in their proceedings and act with them.

For the respondent there was a brief by *Dodge & Fish*, and oral argument by *J. E. Dodge*. They argued, among other things, that the question is not whether Nebraska can in some form lay a tax which must be paid by the relator on account of having made investments there, but simply whether the valuable property consisting in the ultimate right to receive payment, vested in the person of the relator, has its *situs* in Wisconsin so as to be "property within this state." That it has its *situs* here is declared by the courts of substantially every state in the Union, excepting perhaps New York and Kansas. *State Tax on Foreign-held Bonds*, 15 Wall. 317; *Kirtland v. Hotchkiss*, 42 Conn. 426; *San Francisco v. Mackey*, 22 Fed. Rep. 602; *Bullock v. Guilford*, 59 Vt. 516; *Mayor v. Hussey*, 67 Md. 112; *Worthington v. Sebastian*, 25 Ohio St. 8; *Bradley v. Bauder*, 36 id. 28; *Grant v. Jones*, 39 id. 506; *Kellogg v. Winnebago Co.* 42 Wis. 97; *Johnston v. Oshkosh*, 65 id. 473; *Comm. v. Am. Dredging Co.* 15 Atl. Rep. (Pa.), 443.

CASSODAY, J. Some of the questions presented in this case were also involved in *State ex rel. Smith v. Gaylord*, ante, p. 306, and are fully considered in the opinion of Mr. Justice ORTON filed herewith. In this case, therefore, we will confine ourselves to questions not there considered.

1. It is claimed that the board of review was illegally constituted; that the two supervisors, Isham and Norris, acted as members of such board without authority of law; that as the assessor, Wylie, was excused from voting, the action of the board complained of was only by two legally constituted members. Sec. 1, ch. 153, P. & L. Laws of 1857, as amended by sec. 1, ch. 133, P. & L. Laws of 1858, provided that "the inhabitants of the district of country included in the limits and boundaries of the town now known as the 'Town of Elkhorn,' in the county of Walworth, are hereby created a body corporate and politic, by the name and style of 'The Village of Elkhorn,' .    . and shall be competent to have and exercise all the rights, and be subject to all the liabilities and duties, appertaining to a municipal corporation, and shall have and exercise all the rights and be subject to all the liabilities of the inhabitants of the several towns in this state. . . . The elective officers of said corporation shall be three supervisors, one of whom shall be designated as chairman, one assessor, one clerk, one treasurer, one superintendent of schools, four justices of the peace, and two constables, who shall be elected at the same time and in the same manner, *and shall severally have and exercise all the powers*, and be subject to and perform *all the duties* and liabilities, prescribed by statute in reference to said several designated officers in the several towns of this state. . . ." At that time "each assessor" was to appear at a time and place named, "for the purpose of reviewing his assessment," and was to "continue such review from day to day so long as" should be necessary for that purpose. Sec. 32, ch. 18, R. S. 1858. Such assessor at the time, therefore, was the only officer authorized to review such assessment. But the act so incorporating the inhabitants of the whole town of Elkhorn into such village clearly intended by the language quoted, not only that the several elective officers therein named

should have and exercise the same powers and duties then prescribed by statute in reference to said several designated officers in the several towns, but also such as might at any time subsequently be prescribed by statute in reference thereto in the several towns; in other words, that said village should at all times thereafter, with respect to the powers and duties of such elective officers therein named, stand on the same footing as such several designated officers in the several towns. ' Any other construction would create endless confusion, when the manifest purpose was to prevent any confusion. The result is that the statutes respecting such boards of review are applicable to the village of Elkhorn.

The statute provides and for a long time has provided that "*the supervisors, clerk, and assessors of each town*, the mayor, clerk, and assessors of each city, the president, clerk, and assessors of each village in which taxes are assessed and collected independently of the town, shall constitute a board of review for such town, city, or village. . . . A majority shall constitute a quorum." Sec. 1060, R. S., and ch. 74, Laws of 1881. Elkhorn, obviously, is not a village in which taxes are assessed and collected independently of the town, but one which in many respects is on the' same footing as a town, but with increased or enlarged municipal powers. It has no president in name, but the chairman of the board of supervisors exercises corresponding powers. It follows that the board of review in question was legally constituted. The mere fact that the assessor was excused from voting is of no significance.

2. It is strenuously urged that the moneys, notes, and mortgages in the hands of the relator's agent in Nebraska were not taxable in Elkhorn, where he resided. An able brief is presented, and numerous authorities are cited in support of such contention. We do not feel called upon to analyze and harmonize the numerous cases cited. Counsel

is undoubtedly correct in claiming that taxes are only to be levied upon such property as the legislature may prescribe. Sec. 1, art. VIII, Const. The question, therefore, is whether moneys, notes, or notes secured by mortgages on lands in another state, owned by a resident of this state, but in the hands of an agent in such other state for the purpose of being loaned, collected, and reloaned, are among the classes of property prescribed for taxation in the taxing district of such owner's residence. Taxes must be levied upon all property in this state except such as is exempted therefrom. Sec. 1034, R. S. The classes of property so exempted are enumerated in sec. 1038, R. S. None of the property here in question is enumerated in that section. The term "personal property," as used in the "title" of the Revised Statutes on "Taxation," must "be construed to mean and include . . . *all debts due from solvent debtors, whether on account, note, contract, bond, mortgage, or other security, or whether such debts are due or to become due."* Sec. 1036. All personal property must be assessed in the assessment district where the owner resides, except as otherwise provided by statute. Sec. 1040, R. S., and ch. 354, Laws of 1883. No statute provides for the assessment of the classes of property in question in any other than the district of the owner's residence. The owner of personal property is to include in his statement thereof, under oath, "the average amount of such money, notes, bonds, mortgages or other securities *owned or* held by him," etc. Sec. 1056, R. S. No exception is made as to the residence of the debtor, or the location or possession of the evidence of such indebtedness. The substance of it is that if such resident of this state *owns* such moneys, notes, bonds, mortgages, or other securities, then he is required to list them for taxation, if they are taxable under the statutes. Whether they are taxable or not depends upon whether such credits are property within this state. The statutes expressly declare them to be property.

The question, therefore, narrows down to this: whether such credits, belonging to such resident, are property *in this state*, within the meaning of the statute. It must be conceded that the taxing laws of the state have no extraterritorial operation. Such notes and mortgages, however, are mere evidences of indebtedness. The destruction of such evidences does not necessarily extinguish the debts. They are merely choses or things in action. Such mere credits have no other *situs* than the domicile of the owner, unless made so by statute. As observed by counsel for the village, in the case of such intangible species of property the thing that is valuable is "*the right of the creditor to receive* property or money" and to enforce such right by action in court. When, as here, there is an absence of any statute prescribing a different rule, and an absence of any evidence of any injustice by reason of double taxation, we must hold, under our statutes cited, that, for the purposes of taxation, a debt has its *situs* at the residence of the creditor, and may be taxed there. This ruling is certainly supported by the great weight of authority. *State v. Darcy*, 16 Atl. Rep. (N. J.), 160; *Comm. v. American Dredging Co.* 15 Atl. Rep. (Pa.), 443; *Worthington v. Sebastian*, 25 Ohio St. 1; *Bradley v. Bauder*, 36 Ohio St. 28; *Kirtland.v. Hotchkiss*, 100 U. S. 491; and the numerous cases cited by Mr. Freeman in 56 Am. Dec. 527–530. As will there appear, in some states exceptions are made where such evidences of debt are held in another state in such a way as to acquire a *situs* there. Such cases are urged upon us with much force by the learned counsel for the relator, but we decline to follow them; and, besides, the evidence does not squarely bring the case within the rulings of some of those cases.

3. The evidence seems to be sufficient to sustain the action of the board of review.

*By the Court.*— The judgment of the circuit court is affirmed.