KINGSLEY, Appellant, vs. CITY OF MERRILL, Respondent.

*February 4—June 10, 1904.*

*Taxation: Constitutional law: Credits are "property": Classification: Solvent and insolvent debtors: Double taxation: Equal protection of the laws: Deduction of debts from credits.*

1. Notes and mortgages are "property," subject to taxation under sec. 1, art. VIII, Const.
2. Taxation of "debts due from solvent debtors," and exemption of debts due from others, is not a violation of sec. 1, art. VIII, Const., providing that "the rule of taxation shall be uniform."
3. Where a person, although indebted to others, has business or income and pays his debts, or has property out of which collection can be made, he is a "solvent debtor," within the meaning of sec. 1036, Stats. 1898.
4. Taxation of credits does not constitute such double taxation as violates uniformity in the rule of taxation, required by sec. 1, art. VIII, Const.
5. Taxation of credits does not violate that provision of sec. 1, amendm. XIV, Const. of U. S., which declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

DODGE, J., dissenting in part, is of the opinion that the statutory provisions permitting the deduction of a person's debts from the value of the credits owned by him, in ascertaining the taxable value of the latter, without permitting such deduction from the values of other property, violate both sec. 1, art. VIII, Const. of Wis., and sec. 1, amendm. XIV, Const. of U. S.

APPEAL from an order of the circuit court for Lincoln County: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

This is an appeal from an order sustaining a demurrer to the complaint in an action to recover back $374.32 paid under protest; the same being for $363.42 taxes levied on account of notes and mortgages, and $10.90 fees of the officer in making such collection.

The complaint alleges, in effect, that the defendant is a municipal corporation, organized as such; that upon the general assessment roll of the city for 1902 there was carried out by the treasurer against the plaintiff an assessment of $10,430 on account of notes and mortgages owned by the plaintiff, in addition to an assessment of all other personal property of the plaintiff then liable to taxation in that city; that the city clerk made out the tax roll for that year on that basis, and in doing so levied and charged on said tax roll against the plaintiff, on account of such notes and mortgages, a tax for that year of $363.42; that such tax was illegal and void because contrary to the provisions of the constitution of this state; that such tax roll, with a warrant in due form for the collection of the same, was delivered to the city treasurer in December, 1902; that such treasurer demanded payment of all taxes levied against the plaintiff on such tax roll; that the plaintiff paid all of such taxes except the $363.42 so levied on account of notes and mortgages, which the plaintiff refused to pay, for the reason stated; that March 4, 1903, said treasurer, pursuant to the command of said warrant, again demanded payment of the $363.42, with the collector's fee of $10.90 added; that upon the plaintiff's refusal to pay

the same the treasurer seized and levied upon certain personal property of the plaintiff for the purpose of selling the same and collecting such amounts; that thereupon, and in order solely to save his property from being removed and sold and thereby sacrificed, and solely by reason of such duress, the plaintiff paid to the said treasurer the $374.32 so demanded by him, under protest, however, that such levy and collection was wrongful and unlawful, and that the plaintiff would bring action to recover back the money so paid; that the treasurer paid said sum into the defendant's treasury; that May 15, 1903, the plaintiff presented to the common council of the city, for audit and allowance, his duly verified claim for said $374.32 so illegally and wrongfully collected of the plaintiff; that July 16, 1903, the common council wholly disallowed such claim, and the city clerk thereupon notified the plaintiff in writing of such disallowance; that thereupon the plaintiff duly appealed to the circuit court from the decision of the common council disallowing such claim, and prays judgment for the amount so paid, with interest from March 4, 1903, and costs.

For the appellant there was a brief by *Curtis & Reid,* and oral argument by *W. F. Vilas* and *A. H. Reid.* They contended, *inter alia,* that for the purposes of taxation choses in action are not property, are incapable of being taxed as property, and the law in question is void for that reason. The power to tax is not expressly granted by the constitution, because inherent in every sovereignty. Cooley, Const. Lim. (5th ed.) *479; Cooley, Taxation (1st ed.) 3; *Hart v. Smith,* 159 Ind. 182, 64 N. E. 662. It is well settled that the power to tax is not an unlimited despotic power to make exactions, but it is restrained by fundamental constitutional principles so as to make it a power for public good and not for public harm, and so as to maintain the liberty and rights of the people and not oppress them. Cooley, Const. Lim. (5th ed.) 603; *State ex rel. New Richmond v. Davidson,* 114

Wis. 563–574; *Curtis's Adm'r v. Whipple,* 24 Wis. 354;
Cooley, Taxation (1st ed.) ch. III.   One of the fundamental
restrictions or regulations of this power of taxation is that
a property tax must be levied on an *ad valorem* basis.   Any
subject of taxation not constituting a part of the aggregate
wealth of the community or not capable of being valued or
assessed according to the *ad valorem* system must for all pur-
poses of taxation be treated as not included in the term "prop-
erty" and as not subject to a property tax.   Choses in action
constitute no part of the aggregate wealth of the community;
their creation adds nothing to the aggregate wealth of the
community; and their destruction deducts nothing; and they
are not "property" according to the constitutional principles
of taxation.   *People v. Hibernia S. & L. Soc.* 51 Cal. 243;
Report of Wis. Tax Com. 1903, p. 116.   By its very defini-
tion a chose in action or credit is not property; "it is a right
of proceeding in a court of law to procure the payment of
a sum of money."   Rapalje & L. Law Dict. tit. Chose.
Nothing is more certain than that a chose in action or credit
has no value in itself and that it is dependent wholly for its
value upon the possession by the debtor or obligor, or his
power to procure, property that is intrinsically of value.   It
is a right merely to compel the debtor or obligor to deliver
property.   There is no safe guide or rule short of the rule
that in order to constitute property subject to a property tax
the thing must have intrinsic value, be capable of certain and
definite valuation by the process provided for laying property
taxes, and constitute a portion of the aggregate wealth of
the community.   Such a rule would be in accord with many
respectable authorities.   For example: the right of inherit-
ance is not property (*Black v. State,* 113 Wis. 205); choses
in action do not pass by bequest of "all my property" (*Pip-
pin v. Ellison,* 55 Am. Dec. 403); "property" in a statute
permitting municipal taxation does not include solvent cred-
its, money, or bonds (*Pullen v. Raleigh,* 68 N. C. 451); a

bequest of "all my property" did not include a claim of the testator against an Indian tribe (*Jameson's Appeal,* 1 Mich. 99) ; a sale of all the vendor's personal property did not transfer a fire-insurance policy (*White v. Robbins,* 21 Minn. 370) ; the term "property" in taxation statutes held not to include choses in action (*Johnson v. Lexington,* 14 B. Mon. 648 ; *Covington v. Powell,* 2 Met. (Ky.) 226 ; *Chicago v. Hulbert,* 118 Ill. 632) ; choses in action are not property within the meaning of constitutional provisions relating to taxation (*People v. Hibernia S. & L. Soc.* 51 Cal. 243). At common law choses in action could not be seized or sold on execution because not regarded as property.    Freeman, Executions, § 112 ; *Ingalls v. Lord,* 1 Cow. 240 ; *Denton v. Livingston,* 9 Johns. 96, 100 ; *Dart v. Woodhouse,* 40 Mich. 399 ; *People v. Auditors of Wayne,* 5 Mich. 223 ; *Williams v. Reynolds,* 7 Ind. 622 ; *Stephens v. Cady,* 14 How. 528.    Such a rule would be in accord with sound economic principles.    It is property in possession and enjoyment and not merely in right which must ultimately pay every tax.    It is beyond controversy that the taxation of credits as property "results in double taxation in economic consideration and from the standpoint of substantial justice and equity."    Report of Wis. Tax Com. 1903, p. 118.    A purpose to impose double taxation upon property is not to be presumed, but to sustain a tax which would have that effect the intent must be clear and unmistakable.    Cooley, Taxation (1st ed.) 165 ; *Wright v. L. & N. R. Co.* 117 Fed. 1007, and cases cited.    And where statutes in unmistakable terms have required what amounted to a double taxation the courts have not been loath to hold them obnoxious to the "uniformity clause" existing in various constitutions.    *Stroh v. Detroit,* 131 Mich. 109, 90 N. W. 1029, and cases cited.    The taxation of choses in action as property violates the fourteenth amendment of the federal constitution, and it should be held that it also violates sec. 1, of art. VIII, of the state constitution.    Double

taxation in strict legal theory seems to be conceded to be obnoxious to the uniformity requirement of our state constitution. *Second Ward S. Bank v. Milwaukee*, 94 Wis. 587. It certainly is obnoxious to the XIVth amendment to the federal constitution. *Railroad Tax Cases*, 13 Fed. 722; *Santa Clara Co. v. S. P. R. Co.* 18 Fed. 385.

For the respondent there was a brief by *John Van Hecke*, attorney, and *E. M. Smart*, of counsel, and oral argument by *Mr. Van Hecke*.

CASSODAY, C. J.   Counsel for the plaintiff contend with much ability that the notes and mortgages in question are not property, capable of being taxed as such in this state.   Certainly the statutes have treated such debts as property and subject to taxation ever since the state has existed.   This is obvious from the wording of different sections of the statutes.   Thus the statute declares that "taxes shall be levied upon *all property* in this state, except such as is exempted therefrom."   Sec. 1034, R. S. 1878, and Stats. 1898.   The same, in substance, was contained in sec. 1, ch. 15, R. S. 1849.   Then, after defining the term "real property," "real estate," and "land," the statute provides that:

"The term 'personal property' as used in this title, shall be construed to mean and include . . . *all debts due from solvent debtors,* whether on account, note, contract, bond, mortgage or other security, or whether such debts are due or to become due."   Sec. 1036, R. S. 1878, and Stats. 1898.

Those provisions were taken almost literally from sec. 19, ch. 130, Laws of 1868, and are substantially the same as sec. 3, ch. 15, R. S. 1849.   Among the rules for construing the statutes, as prescribed therein, during the last forty-six years, we find that "the words 'personal property' include money, goods, chattels, *things in action, and evidences of debt.*"   And again that "the word 'property' includes prop-

erty, real and personal." Subd. 14, 15, sec. 1, ch. 5. R. S. 1858, and subd. 3, 4, sec. 4972, R. S. 1878, and Stats. 1898. The statute only exempts the taxpayer from "so much of the debts due or to become due to any person as shall equal the amount of *bona fide* and unconditional debts by him owing." Subd. 10, sec. 1038, R. S. 1878, and Stats. 1898, and subd. 10, sec. 2, ch. 130, Laws of 1868. Other sections of the statutes clearly require such notes and mortgages to be assessed as personal property. Secs. 1055, 1056, R. S. 1878, and Stats. 1898.

If such statutes are constitutional, then there can be no doubt but what the tax in question is valid.

The constitution declares that "the rule of taxation shall be uniform, and taxes shall be levied *upon such property* as the legislature shall prescribe." Sec. 1, art. VIII, Const. If it is true that notes and mortgages are not property subject to taxation under this clause of the constitution, then it is very singular that the fact was not discovered by the able lawyers who have revised the statutes from time to time—first in 1849, and then in 1858—and especially those who revised the statutes of 1878, because that revision took place several years after the lengthy controversy and numerous conflicting decisions and opinions as to the validity of certain provisions of the statutes under the clause of the constitution above quoted. The subject related to revenue and was of vital importance to the state and its citizens; and in revising the statutes on the subject the revisers, from time to time, must have scrupulously sought to keep within the bounds of legislative power. The same may be said of the legislature, from time to time, amending the statutes in respect to taxation.

Such long and uniform sanction by law revisers and law-makers of the right to tax notes and mortgages would, of course, be entitled to great weight in construing an ambiguous or doubtful provision of the constitution, yet it is entitled

to no weight if the statutes in question are in conflict with the plain meaning of the constitutional provision quoted. *State ex rel. Hudd v. Timme,* 54 Wis. 318, 339–341, 11 N. W. 785; *State ex rel. Weiss v. District Board,* 76 Wis. 177, 195–199, 44 N. W. 967; *State ex rel. Lamb v. Cunningham,* 83 Wis. 90, 141–143, 53 N. W. 35, and cases there cited; *Travelers' Ins. Co. v. Fricke,* 94 Wis. 258, 266, 68 N. W. 958. The question of such validity is here squarely presented, and must be squarely met and disposed of on the merits.

Undoubtedly, as stated by the Tax Commission and urged by counsel, that which gives a credit

"value, and which the present assessment laws *recognize and treat as property,* consists, not in the written instruments or other evidences of the creditor's right or security, but in the right itself—the creditor's right to receive and enforce payment of his demand. This right of the creditor is *admittedly a thing of value,* assuming always that the debtor is solvent. In many of its forms, with its evidences, it may be freely transferred from one person to another, and often performs the office of a medium of exchange more efficiently than money." Report of Wis. Tax Com. 1903, p. 116.

But that does not indicate that notes and mortgages are not property. On the contrary, it pretty clearly indicates that they are property. One definition of property in the Century Dictionary is:

"The right to the use or enjoyment or the beneficial right of disposal of anything that can be the subject of ownership; ownership; estate; especially ownership of tangible things. In the broad sense, *a right of action is property.*"

"A vested right of action is property in the same sense that tangible things are property." Bouvier's Law Dict.

That is a quotation from the opinion of the Supreme Court of the United States in *Pritchard v. Norton,* 106 U. S. 124, 132, 1 Sup. Ct. 102. Mr. Black says, "Personal property is further divided into property in possession and property or choses in action." In the latest Encyclopædia of Law it is stated that:

"In general, the word 'property,' standing alone, will include *choses in action.* Thus the word without the qualifying term 'personal' has been held to include solvent credits. So it has been held to include bank notes, promissory notes, bills of exchange, bonds, insurance policies, judgments, and stocks." 23 Am. & Eng. Ency. of Law (2d ed.) 264, 265.

In support of the text numerous adjudications are cited. In one of them, COOLEY, C. J., makes this statement: "A right of action is as much property as is a corporeal possession." *Power v. Harlow,* 57 Mich. 107, 111, 23 N. W. 606. This court has held, in effect, that notes and mortgages in favor of a nonresident and against a resident of this state are "property within this state," and subject to be reached by creditors' bill. *Bragg v. Gaynor,* 85 Wis. 468, 481–488, 55 N. W. 919. So this court has held that notes secured by mortgages on land in another state, and in the hands of an agent in such state, but belonging to a resident of this state, are "property in this state," within the meaning of the constitution and the statutes of this state, and hence are taxable here. Sec. 1, art. VIII, Const.; secs. 1034, 1036, 1038, 1040, 1056, Stats. 1898; *State ex rel. Dwinnell v. Gaylord,* 73 Wis. 316, 323–325, 41 N. W. 521. It is there said that:

"Such notes and mortgages, however, are mere evidences of indebtedness. The destruction of such evidences does not necessarily extinguish the debts. They are merely choses or things in action. . . . In the case of such intangible species of property, the thing that is valuable is the right of the creditor to receive property or money, and to enforce such right by action in court."

That case has since been sanctioned in this and other states. *Perrigo v. Milwaukee,* 92 Wis. 241, 65 N. W. 1025; *Howell v. Gordon,* 127 Mich. 517, 86 N. W. 1042. So it was held in Vermont that debts due from solvent debtors, residing in that state, to a nonresident creditor, upon promissory notes, were personal property within the meaning of the statutes of that state, and that the legislature of that state had

power to enact a law subjecting such property in the hands of an agent there to taxation. *Catlin v. Hull*, 21 Vt. 152. So it has been held in Alabama that solvent credits, evidenced by negotiable promissory notes, were taxable at the place of the owner's residence in that state, although secured by mortgage on lands in another state, where they were payable and held by an agent. *Boyd v. Selma*, 96 Ala. 144, 11 South. 393. There seems to be no escape from the conclusion that the notes and mortgages in question were property, within the meaning of the statutes cited and the constitutional provision quoted.

2. The more important question is whether "the rule of taxation" prescribed by those statutes is "uniform," within the meaning of such constitutional provision. One of the grounds for claiming that such rule is not uniform is that the statutes mentioned only required taxes to be levied on "all debts due from *solvent* debtors," after deducting therefrom "the amount of *bona fide* and unconditional debts" owing by such taxpayer. In other words, the statutes omit from taxation debts due from insolvent debtors. It is claimed that, if "debts due from solvent debtors" are property, then debts due from insolvent debtors are also property, and that the statute requiring taxes to be levied upon the former without being levied upon the latter is in violation of the rule of uniformity required by the constitution.

If the statute is void upon the ground thus suggested, then we have never had a valid statute on the subject in this state. We have already shown that the statute under which the tax in question was levied has existed in substantially the same form ever since the revision of 1849. Before that, and several years prior to the adoption of our constitution, the territorial legislature enacted that "the term personal property . . . shall be construed to include . . . debts due from *solvent debtors*, over and above the amount of debts owed by the owner thereof, whether due on account, contract, notes,

bond, or mortgage." Laws of Wis. Ter. 1841, No. 4, pp. 20, 21. That provision was taken almost literally from the Revised Statutes of New York, where the same has remained in force in substantially the same form ever since. Sec. 3, tit. 1, ch. 13, pt. 1, p. 388, R. S. of N. Y. 1829; subd. 4, § 2, art. I, 3 Birdseye's R. S., Codes & Gen. Laws of N. Y. (2d ed.) p. 3091.

The question recurs, What is meant by the words "solvent debtors," as thus used in the statutes? Of course, "solvent debtors" include all who are not insolvent. Undoubtedly the meaning of the words depends very largely upon the subject to which they are applied and the circumstances under which they are used. In bankruptcy and insolvency laws and proceedings they have a different meaning than in common discourse. Thus it is said in a recent work that:

"As used in insolvency and bankruptcy laws, especially when applied to traders or persons engaged in commercial pursuit, the term 'insolvency' generally means the condition of a person who is unable to pay his debts as they become due in the ordinary course of business. According to this definition, a person may be insolvent though he has assets exceeding in value the amount of all his liabilities." 16 Am. & Eng. Ency. of Law (2d ed.) 636, 637.

But the same authority states in the same connection that:

"In its popular and general sense, the term 'insolvency' denotes the insufficiency of the entire property and assets of an individual to pay his debts."

Undoubtedly the general understanding is that an insolvent debtor is one who has not property sufficient to pay all his debts, or out of which his debts may be collected. Century Dict. The statute in question was made for the guidance of assessors and people generally. It is to have a practical construction. It was never intended that the assessor should engage in a judicial investigation to ascertain the exact balance between the assets and liabilities of such debtors. Where a person, although indebted to others, has business or income

and pays his debts, or has property out of which collection can be made, then he may fairly be regarded as a solvent debtor.

Under the constitutional provision quoted, was it competent for the legislature to require taxes to be levied upon "debts due from solvent debtors," without requiring taxes also to be levied upon debts due from *insolvent* debtors? In other words, was the rule of uniformity broken by such discrimination between good and bad debts? This court held many years ago that:

"The legislature has power to prescribe not only the property to be taxed, but the rule by which it must be taxed, and the only limitation of that power is that the rule shall be uniform. The power to prescribe what property shall be taxed necessarily implies the power to prescribe what property shall be exempt." *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 89, *et seq.,* 8 N. W. 833.

It was there said, in effect, that such rule of taxation had never been regarded as requiring "uniformity as to the *subjects* of taxation," and numerous provisions of the statutes were there referred to as illustrating the truth of the statement. While recognizing that "arbitrary classification of inclusion and exclusion," based upon "no rational grounds for distinction in the character, use, productiveness, or circumstances of the property or subjects taxed," could not be indulged, yet this court, in a later case, reaffirmed the authority of the legislature to make legitimate classification of property for the purposes of taxation. *State ex rel. Sanderson v. Mann,* 76 Wis. 469, 476, 477, 45 N. W. 526, 46 N. W. 51. It was there said that, since the *Taylor County Case,*

"Numerous decisions have been made by courts of high authority sanctioning the reasonable classifications of property for the purposes of taxation, and holding that the same were not in violation of the rule of uniformity." Citing a number of cases in support of the proposition. See *Black v. State.* 113 Wis. 216, 217, 89 N. W. 522.

The new constitution of Pennsylvania of 1873 provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Sec. 1, art. IX, Const. of Pa. See 52 Wis. 87, 8 N. W. 833. Under that provision it was held in that state that:

"The power to impose taxes for the support of the government, with the power of classification, still belonging to the legislature under the new constitution, the selection of the subjects thereof, their classification, and the methods of collection to be provided, *are matters purely legislative.* The power to classify being given, all that is then required by the constitution is that the taxes shall be uniform upon the members of a class, and it is the uniformity of taxation according to the classification made which is a question to be determined by the courts. Absolute equality is unattainable, and a mere diversity in the methods of assessment and collection violates no rule of constitutional right, if, when they are applied, there is substantial uniformity in the results." *Comm. v. Delaware D. C. Co.* 123 Pa. St. 594, 615, 16 Atl. 584; *Comm. v. L. V. R. Co.* 129 Pa. St. 455, 18 Atl. 406, 410.

The constitution of Missouri of 1875 requires that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Sec. 3, art. X, Const. of Mo. In a case arising in that state under that provision of the constitution, it was held by the supreme court of the United States that:

"Diversity of taxation, both with respect to the amount imposed and the various species of property selected, either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality in taxation, and of a just adaptation of property to its burdens. A system of taxation which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation, and of a just adaptation of property to its burdens." *Pacific Exp. Co. v. Seibert,* 142 U. S. 339, 12 Sup. Ct. 250.

If, for the purposes of taxation, any classification of debts is permissible, under the constitutional provision in question, then certainly the difference between "debts due from solvent debtors" and debts due from insolvent debtors is sufficient to furnish a basis for such classification. We must hold that the statute in question is not void by reason of such classification.

3. It is further contended that if "debts due from solvent debtors" are property within the sense mentioned, yet to tax the same necessarily results in double taxation, and hence is repugnant to the rule of uniformity required by our constitution. Our attention is called to the report of the Wisconsin State Tax Commission on the subject. Pages 116–118. Undoubtedly it is true, as there said, that "for every credit there exists an indebtedness of equal amount;" that "the sum of all credits in the world is exactly equal to the sum of all indebtedness;" that if, by some method of exchange or transfers, all debts were paid, then the corresponding credits would thereby become wholly extinguished; that "the result would be a great shifting of property or changing of financial resources among individuals," but that there would be no less actual property in the world; "that to treat credits as property," as well as all lands and tangible things, "is in substance and effect a duplication of values;" that "such duplication results in double taxation, in economic consideration, and from the standpoint of substantial justice and equity." There may be great force in such statement when addressed to the legislature engaged in the framing of taxation laws, but they are only entitled to consideration here as bearing upon the constitutionality of the statutes mentioned. The report assumes the constitutionality of such statutes, and does "not contend that such duplication results in double taxation, in technical and legal contemplation, according to the general current of judicial decisions." We are not called upon to consider the wisdom of the statutes, but the power of the leg-

islature to enact the statutes. The case seemingly most relied upon by counsel is *People v. Hibernia Bank,* 51 Cal. 243, where it was held that "credits are not property in the sense in which the word 'property' is used in sec. 13, art. XI, of the constitution, and cannot be assessed for taxes or taxed as property, even if secured by mortgage." The section of the constitution of that state therein referred to declares that "taxation shall be *equal* and uniform throughout the state. All property in this state shall be taxed in *proportion to its value,* to be ascertained as directed by law." 51 Cal. 244. It will be observed that this provision contains restrictions upon legislative power not found in our constitution. The equality of taxation and the proportionate value of property are requirements not mentioned in our constitution. The decision in that case was in obedience to such requirements. It seems to be placed upon the grounds that credits were incapable of proportionate valuation as there required, and that to tax property purchased on credit, and also to tax the credit, was unequal taxation, and hence forbidden by the constitution. The provision of the constitution of that state is quite similar to some of those referred to from other states in the *Taylor County Case,* where it was said that:

"The provisions quoted from the several state constitutions have each contained one or more elements of restriction upon legislative power not present in our constitution." *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 88, 8 N. W. 833. See pages 60–63 and 78–88, 52 Wis.

The decision in that case is certainly not an authority in a case under our constitution, containing no such restrictions. In Pennsylvania, where, as we have shown, the constitutional restriction is very much like our own, it is held that:

"The legislature has the power to impose double taxation, provided it is done in such manner as to secure the uniformity which the constitution requires." *Comm. v. Fall Brook C. Co.* 156 Pa. St. 488, 26 Atl. 1071; *Comm. v. Lehigh C. & N. Co.* 162 Pa. St. 603, 29 Atl. 664.

Of course, there is a presumption against the existence of an intention to impose such double taxation, until overcome by the express language of the statute. Id. See, also, *Stroh v. Detroit,* 131 Mich. 109, 90 N. W. 1029. In this state it has been held that:

"In order to render taxation double, one person or known subject of taxation must be required to contribute twice directly to the same burden, while other subjects of taxation are required to contribute but once." *Second Ward S. Bank v. Milwaukee,* 94 Wis. 587, 69 N. W. 359.

In that case the shares of stock in the bank were taxed as the property of the shareholder, while the real estate forming a part of the capital stock was taxed as the property of the bank. And in a recent case it was held by this court:

"That the fact that the capital of an unincorporated association engaged in banking consists of real property, and was taxed as such to the association, does not affect the question of its being taxable in its intangible form to the members of such association." *State ex rel. Batz v. Lewis,* 118 Wis. 432, 95 N. W. 388.

The correctness of these decisions has not been questioned, and we perceive no good reason why they are not based upon solid ground. The case at bar does not present a case of double taxation, as defined by this court in the cases cited. We must hold that the statutes in question are not repugnant to the constitutional requirement that "the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." Sec. 1, art. VIII, Const.

4. Counsel also contend that the taxation of "debts due from solvent debtors" is prohibited by that clause of the federal constitution which declares that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Sec. 1, XIVth Amendm. Const. of U. S. The question was determined by the supreme court of the

United States against' such contention of counsel many years ago, in a case wherein it was held that:

"This court can afford the citizen of a state no relief from the enforcement of her laws prescribing the mode and subjects of taxation, if they neither trench upon federal authority nor violate any right recognized or secured by the constitution of the United States. The constitution does not prohibit a state from taxing her resident citizens for debts held by them against a nonresident, evidenced by his bonds, payment whereof is secured by his deeds of trust or mortgages upon real estate situate in another state." *Kirtland v. Hotchkiss,* 100 U. S. 491, affirming the same case in 42 Conn. 426.

See, also, *Kentucky Railroad Tax Cases,* 115 U. S. 321, 6 Sup. Ct. 57; *Gibbons v. District of Columbia,* 116 U. S. 404, 6 Sup. Ct. 427; *Davenport Bank v. Davenport Board,* 123 U. S. 83, 8 Sup. Ct. 73; *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255; *Adams Exp. Co. v. Ohio,* 165 U. S. 194, 17 Sup. Ct. 305; *Western U. Tel. Co. v. Indiana,* 165 U. S. 304, 17 Sup. Ct. 345; *Am. Sugar R. Co. v. Louisiana,* 179 U. S. 89, 21 Sup: Ct. 43; *Kidd v. Alabama,* 188 U. S. 730, 23 Sup. Ct. 401; *Board of Assessors v. Comptoir National,* 191 U. S. 388, 24 Sup. Ct. 109. Several of these cases sanction the classification of property in the states for the purposes of taxation.

We must hold that the statutes in question are valid enactments, and that the notes and mortgages belonging to the plaintiff were subject to taxation.

*By the Court.*—The order of the circuit court is affirmed.

Dodge, J. I concur in the holding of my brethren that, in the light of constitutional and legislative history, the framers of our constitution must be deemed to have used the word "property," in sec. 1, art. VIII, in a sense broad enough to include credits, however unphilosophical may be the treatment of such assets as property for purpose of taxation. I also yield to the authority of the heretofore decided cases in

this court declaring that taxation both of the credits and of all the property of the debtors does not constitute such double taxation as to breach the uniformity rule of the constitution, however clear may be the fact that thereby the debtor is *pro tanto* taxed twice. *Weston v. Charleston,* 2 Pet. 449; *San Mateo Co. v. S. P. R. Co.* 13 Fed. 722, 732. Also I agree that inclusion of debts of solvent debtors, and exclusion of others, is legitimate classification, upon distinctions germane to the subject of taxation. So that, as to most of the subjects discussed in the opinion in this case, I am in general accord with that document, but to the conclusion reached I think there is a still further obstacle urged in argument, but passed without comment in the opinion. That I shall attempt to state.

If we concede that for purposes of taxation credits are property, the lawmakers must accept with that concession the burdens and limitations imposed on them in exercising their power to tax property. The limitation imposed by our constitution is that the rule of taxation must be uniform. This is re-enforced by the fourteenth amendment to the federal constitution, which prohibits the state from denying to any person the equal protection of the law. The state constitution prohibits discrimination in rules of taxation between different kinds of that property which the legislature prescribes to be taxed, while the federal constitution protects the owners of property against discrimination in tax laws, as in all others. *Black v. State,* 113 Wis. 205, 89 N. W. 522; *State v. Whitcom, ante,* p. 110, 99 N. W. 468. I have found myself unable to escape the conviction that both of those prohibitions have been defied in that provision of our legislative scheme of taxation which permits the deduction of debts from the value of the credits owned by any person, in ascertaining their taxable value, without permitting such deduction from the values of other property. The statutory rule of taxation of all prescribed property is that the true

cash value is to be ascertained, and that all general taxes are to be levied proportionately to such values. Assenting, as I do with some hesitation, to the view of my brethren that the statutes direct the ascertainment of the cash value of credits, as distinguished from their nominal or face value, I still cannot think that uniformity of rule is maintained when deductions are permitted from the value of one kind of the property prescribed to be taxed, and not from that of other kinds. I think that my brethren would hardly hold that uniformity was maintained in a statute which permitted deduction of the owner's debts from the value of his cattle but not of his horses, of his wheat but not of his corn; but I can see no difference between such cases and that now before us, in the principle involved. If a good $1,000 bond and $1,000 worth of lumber are both alike property, in the constitutional sense, why should one be valued for taxation at $500, and the other at $1,000, as they would be if the owner of each owed $500 ? Such discrimination signifies a perhaps unconscious recognition of a philosophical absurdity in attempting to class credits with tangible assets as taxable property, but only upon such classification does the power to tax credits as property exist at all under our constitution. Some have suggested that one whose wealth consists of credits has wealth only to the excess of his credits over his debts. This may be conceded without advancing the argument. Equally the wealth of him who has tangible assets is not correctly measured unless his debts be deducted. In neither case, however, is that material to the question of taxation, for it is not the wealth of the individual on which the constitution authorizes taxes to be laid, but the property within this state. Others have urged that credits constitute a fund from which men ordinarily expect to discharge their debts, and that somehow this justifies taxation of only the balance. The premise, however, is unfounded in fact. The farmer, the merchant, the manufacturer, ordinarily relies on the proceeds of his crops or stock in trade to

pay his current debts, rather than the securities in which he may have invested. Usually only he who has not surplus for investment relies on his credits to meet debts. He whose wealth is mainly invested in bonds and mortgages does not. No other ground worthy even of mention has, to my knowl-edge, ever been advanced to justify such discrimination. I find myself unable to conceive any. While, of course, I must concede that not only may the legislature exempt certain classes of property, by implication from the power to pre-scribe that which shall be taxed, and may even classify that which they do prescribe for taxation, so that some may be treated differently from other classes, without disobedience of the behest that the rule be uniform, still such classification must be legitimate—must be based upon distinctions having real relation to the differences in the rule of taxation applied to each. *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098; *Black v. State,* 113 Wis. 205, 89 N. W. 522; *State v. Whitcom, ante,* p. 110, 99 N. W. 468. Finding, as I do, no differences between credits and tangible property in any wise germane to the valuing of one with deduction for debts, and the other without, I cannot escape the conclusion that the rule of uniformity is infringed by this statute.

The still further classification attempted by the legislation of 1903 (ch. 378, Laws of 1903), whereby the most solvent class of credits—those secured by mortgage on real estate—is exempted entirely, while others are taxed, will present curious and interesting questions when, if ever, it comes up for judicial consideration.

The further question whether certain persons are denied "equal protection of the laws" by the provision now under discussion, as that phrase is used in the fourteenth amend-ment to the federal constitution, is one upon which this court cannot speak finally unless it speak affirmatively. The final construction and enforcement of this prohibition lies with the courts of the United States. The ultimate court of that

jurisdiction has not as yet had occasion to declare upon the·
validity of such a tax scheme as ours, but the circuit court
has, and that, too, in no uncertain terms, by the pen of one·
of the ablest of the then members of the supreme court—
Mr. Justice FIELD. In *San Mateo Co. v. S. P. R. Co.* 13 Fed.
722, and *Santa Clara Co. v. S. P. R. Co.* 18 Fed. 385, was·
considered a law which authorized deduction of mortgage·
debts from the value of other property in ascertaining its
valuation for taxation, but denied such deduction from the
value of property belonging to railroad companies.   It was
held that since the law designated property as the subject of
taxation, and its value as the basis of apportionment, the al-
lowance of deduction of mortgage debts from true value of
some, and the denial of similar deduction from that of other,
property in the taxable class, denied to the owners of the latter·
equal protection of law.   The former of these cases was taken
to the supreme court, but was affirmed on other grounds;
that court recognizing the very grave importance of the ques-
tion whether the state law was in defiance of the federal con-
stitution, but restraining itself from expressing any opinion
thereon, because such question belonged "to a class which that
court should not decide unless their determination was essen-
tial to the disposal of the case." *S. C.* 118 U. S. 394, 410,.
6 Sup. Ct. 1132, 1140.   These two cases have, I believe,.
never since been seriously questioned in the federal courts,.
but have often been referred to approvingly and as author-
ity. *Nashville, C. & St. L. R. Co. v. Taylor,* 86 Fed. 168.
They seem in accord with the principle decided in *People v.
Weaver,* 100 U. S. 539, which held that a law permitting de-
duction of debts from the total of other personal property,.
but denying such deduction from value of stock in national
banks, was discriminatory against the latter and therefore
forbidden by sec. 5219, R. S. of U. S.   I shall not feel jus-
tified in occupying space to quote, as I should like to do, from
the very clear and vigorous arguments of FIELD, J.   Suffice·

it to say that they convince me that equal protection of the laws is denied when a creditor class is created of those whose credits equal or exceed their debts, and an immunity from taxation granted them which is withheld from the debtor class, composed of those whose debts exceed their credits. Of the policy of such a law, I might properly express opinion only as a citizen.