STATE EX REL. BERNHARD STERN & SONS, Respondent, vs. BODDEN, Tax Commissioner, Appellant.

*December 8, 1916—January 16, 1917.*

*Taxation: Constitutional law: Occupation tax on operators of grain elevators: Exemption of grain therein: Statute construed: Classification: Equal protection of the laws.*

1. Ch. 209, Laws 1915,—providing (sec. 1057m) that "every person . . . or corporation operating a grain elevator or warehouse in this state, except elevators and warehouses on farms for the storage of grain raised by the owner thereof, shall . . . pay an annual occupation tax of a sum equal to one quarter of one mill per bushel upon all wheat and flax and one eighth of one mill per bushel upon all other grain received in or handled by such elevator or warehouse during the preceding year ending April thirtieth; and such grain shall be exempt from all taxation, either state or municipal,"—imposes, not a property tax, but an occupation tax, within the meaning of sec. 1, art. VIII, Const.

2. The provision that "such grain shall be exempt from all taxation" was intended to exempt, in consideration of the payment of the occupation tax, only grain actually in the elevators on May 1st of each year, and not to exempt grain then in the possession of others, although it might at some time during the year be handled in such elevators or warehouses.

3. Under sec. 1, art. VIII, Const., "reasonable exemptions may be provided;" and the grain handled in public elevators and warehouses, being a commodity in transit from place to place in the channels of trade and much of it in such transit from state to state, constitutes a different class of property, for the purposes

of local taxation, from the grain stored in private warehouses by the producer. The exemption of the one and denial of such exemption to the other, as provided in ch. 209, Laws 1915, are based therefore upon legitimate classification, and do not constitute an unjust discrimination or denial of the equal protection of the laws.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

This is a *certiorari* action to review the action of the board of review of the city of Milwaukee in making a personal property assessment against the plaintiff for grain in its elevator on May 1, 1916.

The petitioner operates a grain elevator and warehouse in the city of Milwaukee. On May 1, 1916, petitioner filed with the proper assessor of the city of Milwaukee a statement of all grain received or handled in its elevator and warehouse during the year immediately preceding May 1, 1916. A personal property assessment was made against the petitioner in the sum of $324,300, which included an item of $250,000 as "manufacturer's stock," consisting entirely of grain in the possession of the petitioner on May 1, 1916. Petitioner filed objections against this assessment and appeared before the board of review of the city of Milwaukee and made full disclosure under oath of all personal property belonging to it on May 1, 1916. The board of review thereupon increased the personal property assessment on the grain from $250,000 to $467,060.

The petitioner then brought this *certiorari* proceeding to review the action of the board of review of the city of Milwaukee and have the personal property assessment set aside. The defendant obtained an order to show cause why the writ of *certiorari* should not be superseded and held for naught and the action dismissed upon the ground that the facts stated by the petition are not sufficient to authorize the granting of the relief prayed.

The circuit court entered an order denying defendant's motion to supersede the writ of *certiorari,* and it is from the order denying such motion that this appeal is taken.

.For the appellant there was a brief by *Clifton Williams,* city attorney, and *Garfield S. Canright,* assistant city attorney, both of Milwaukee, and oral argument by *Mr. Canright.*

*Carl F. Geilfuss* of Milwaukee, attorney, and *J. A. Murphy* and *W. R. Foley,* both of Superior, of counsel, for the respondent.

SIEBECKER, J.   This action was commenced in the Milwaukee county circuit court by the petitioner praying that a writ of *certiorari* issue to *E. H. Bodden,* as the city tax commissioner, having possession of the records and assessment roll for the 1916 assessment of taxes, to review an alleged erroneous and illegal assessment of the petitioner's personal property, described as "manufacturer's stock" in the tax roll, which it is stated consisted of grain in petitioner's elevator and warehouse on May 1, 1916, located in the city of Milwaukee.   The petitioner alleges that such assessment was · erroneous and illegal for the reason that such grain was on May 1, 1916, exempt from taxation under the provisions of ch. 209, Laws 1915, creating secs. 1057$m$ to 1057$q$, inclusive, Stats. 1915.   The appellant claims that these statutes are unconstitutional and void and that this grain was legally taxable and was properly assessed.   Ch. 209, Laws 1915, is entitled "An act to create sections . . . of the statutes, providing for the exemption of grain from taxation, providing for the listing of grain in elevators and warehouses, and for an occupational tax on operators of grain elevators and warehouses."   Sec. 1057$m$ provides:

"Every person, copartnership, association, company or corporation operating a grain elevator or warehouse in this state, except elevators and warehouses on farms for the storage of grain raised by the owner thereof, shall on or before December fifteenth of each year pay an annual occupation

tax of a sum equal to one quarter of one mill per bushel upon all wheat and flax and one eighth of one mill per bushel upon all other grain received in or handled by such elevator or warehouse during the preceding year ending April thirtieth; and such grain shall be exempt from all taxation, either state or municipal."

It is also provided in the act (sec. 1057o) that the tax specified in the act "shall be separately assessed to the person . . . chargeable therewith by the assessor and shall be included in the assessment roll annually submitted by such assessor to the town, village or city clerk and shall be entered by said clerk on the tax roll." Other parts of the act deal with the making of returns of amount of business done by operators of such elevators annually, and the payment and collection of such tax, for correction of erroneous return, and assessments for failure of making return by the operators of such elevators and warehouses.

The appellant asserts that the law imposes a property tax within the provisions of sec. 1, art. VIII, of the state constitution. This section provides:

"The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

The last clause of this section was added to the first clause by amendment in 1908. By the amendment the legislature was expressly given the power to impose graduated and progressive taxes on incomes, privileges, and occupations. Privilege and occupation taxes were held to be proper before the adoption of the amendment, and exemption of various kinds had been approved as within legislative discretion when assailed in the courts. It was held in *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, that taxation by the state under the original constitutional provision, which declares that "the rule of taxation shall be uniform, and taxes

shall be levied upon such property as the legislature shall prescribe," does not limit taxation to an *ad valorem* property tax nor prohibit the levying of excise taxes. In commenting on early decisions of this court on the subject the present chief justice in that case declared:

"So we regard it as settled by the necessary effect of the decisions named that the railroad tax legislation of 1854, and *a fortiori* the railroad license legislation of 1860 and of following years, while imposing a tax in the proper sense, did not impose a tax upon property within the meaning of sec. 1 of art. VIII of the constitution, but was in fact excise taxation upon the privilege of transacting business;" and "It is matter of history that this occupation or privilege tax has· been continuously levied by the state unchallenged since the decision of the *Kneeland Case, supra* [*Kneeland v. Milwaukee,* 15 Wis. 454], up to the passage of ·ch. 315, Laws of 1903, and that a very large part of the revenues of the state have been derived therefrom."

Many other occupation taxes of business are referred to as in force and the properties thereof exempted from taxation, and it was held that this original constitutional provision that "the rule of taxation shall be uniform," so far as applicable to excise taxation, "must necessarily mean taxation which does not discriminate, but which operates alike on all persons similarly situated. In other words, proper classification may be made and a different rate applied to each class." 129 Wis. 221. These principles were also applied · in the two railroad tax cases reported in 128 Wis. [*State v. Railway Cos.* 128 Wis. 449, 108 N. W. 594; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557] and other cases cited therein. These former decisions clearly show that the legislature in dealing with the subject of taxation included in ch. 209, Laws 1915, under the amendment to sec. 1, art. VIII, of the state constitution, was manifestly imposing an occupation tax and was not acting under the first clause of this section, providing for a tax on such property as it might prescribe. A reading of the title of this

chapter clearly indicates what the legislature intended, for it is declared to be: "An act . . . providing for the exemption of grain from taxation, providing for the listing of grain in elevators and warehouses, and for an occupational tax on operators of grain elevators and warehouses." This language manifestly negatives the idea that the tax is a property tax as described by the first clause of this constitutional provision. The provisions of the body of the act declare in the clearest terms that the tax is imposed on the business and that the grain therein specified is to be exempt from taxation. Obviously the tax is an occupational tax and operates equally on all persons within the law.

It is provided in this act that "such grain shall be exempt from all taxation, either state or municipal." The words "such grain" refer back to "wheat and flax" which is "received in or handled by such elevator or warehouse during the preceding year ending April thirtieth." Of this grain only such parts as were actually in the elevators or warehouses on May 1st could be assessed to the operators under the statutes for taxing property. It is a matter of common knowledge that the grain handled in such elevators and warehouses throughout the year which was not therein on May 1st cannot be traced to the possession of others either before or after passing through such elevators or warehouses. It is therefore manifest that the legislature did not intend such grain should be exempt from taxation in the possession of others for the year it was handled in the elevator under the foregoing exemptive clause. It appears that the legislature intended to do the practical and possible thing, namely, to exempt the grain actually in such elevators and warehouses on May 1st of each year. We cannot doubt but that this was the legislative purpose. An exemption of such grain from taxation to the operators of elevators and warehouses seems the natural thing for the legislature to do in consideration of the payment of the occupation tax of the operator. This

tends to accomplish the evident legislative object of securing a more equitable distribution of the tax burdens.

It is strenuously insisted that this interpretation of the act makes it invalid because it exempts grain handled in elevators and warehouses from taxation and makes all grain not so handled taxable. This contention is based on the ground that such exempted grain cannot reasonably be made a class from all other grain for the purposes of taxation and therefore denies to the owner of the nonexempt grain the equal protection of the law. We are cited to *Black v. State,* 113 Wis. 205, 89 N. W. 522, to sustain this claim. It is there said:

"A tax law which makes unjust discrimination,—which taxes one person at one rate, and another one, within the same class and under like circumstances, at another rate, or exempts him altogether,—denies the equal protection of the laws."

This rule is well established, but it is there also stated:

"There may indeed be classification; and if the classification be founded upon real differences, affording rational grounds for a distinction, such classification will not violate the rule of uniformity and equality. So, also, there may be exemption, but the exemption must be reasonable in amount, and founded, also, on rational grounds."

The subject of classifying and exempting property for the purposes of taxation has received repeated consideration in the decisions of this court, as may be seen by examination of the following: *Milwaukee & M. R. Co. v. Waukesha Co.* 9 Wis. 431; *Kneeland v. Milwaukee,* 15 Wis. 454; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 8 N. W. 833; *State ex rel. Sanderson v. Mann,* 76 Wis. 469, 45 N. W. 526, 46 N. W. 51; *Kingsley v. Merrill,* 122 Wis. 185, 99 N. W. 1044; *State v. Railway Cos.* 128 Wis. 449, 108 N. W. 594; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557; *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *St. John's*

*M. Acad. v. Edwards,* 143 Wis. 551, 128 N. W. 113; *Lawrence Univ. v. Outagamie Co.* 150 Wis. 244, 136 N. W. 619. In the *Taylor County Case* the court elaborated at length the grounds upon which the legislature may exempt property under the constitutional provision of sec. 1 of art. VIII before the amendment of 1908. It is there said:

"But the right of the legislature to prescribe what property shall be taxed, includes the right to prescribe what shall not be taxed. The right of choosing some from the multiplicity of kinds, classes, species, use and ownership of property in the state, and the rejection of others, includes the absolute power to discriminate between what shall be chosen and what rejected, except in so far as it may be limited by the requirement of a uniform rule. But what is to be the standard of the rule? The constitution simply defines it as 'the rule of taxation.'" Page 92.

In *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 642, 108 N. W. 557, the court again adverts to the power the legislature may exert regarding exemption:

"Under our constitution, it must be remembered, there is the amplest power on the part of the legislature to exempt an entire class of property from taxation, and to make such class very narrow, even excluding from the benefits accorded to the members thereof those owning property of the same general class, so long as the character of that owned by those of the subclass is so far different from that owned by others, as, within the boundaries of reason at least, to suggest necessity or propriety, having regard to the public good and the constitutional object to be attained, and limitations in respect thereto, of substantially different legislative treatment."

Again on page 655 the court declares:

"The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason."

The contention is here made that allowance of exemption to elevator and warehouse operators of grains they have on

May 1st in each year, and denial of exemption to others own-
ing grain at such times, is necessarily discriminatory and
violates the principle of legitimate classification. It must
be borne in mind that the amendment to the constitutional
provision authorizing the legislature to impose privilege and
occupation taxes also declares that "reasonable exemptions
may be provided." The people manifestly intended that the
legislature, for the purpose of promoting a more just distri-
bution of the burdens of taxation, should exert this power by
the imposition of the specified excise taxes and by allowing
liberal exemptions of property from taxation, if the rule of
equality is not infringed upon. Commenting on this change
in the public policy concerning taxation. it was observed in
the opinion in the *Income Tax Cases,* 148 Wis. 456, 506, 134
N. W. 673, 135 N. W. 164:

"By this act [Income Tax Law] the legislature has, in
substance, declared that the state's system of taxation shall
be changed from a system of uniform taxation of property
(which so far as personal property is concerned has proven a
failure) to a system which shall be a combination of two
ideas, namely, taxation of persons progressively, according to
ability to pay, and taxation of real property uniformly, ac-
cording to value."

The legislators had their attention brought, by the state tax
commission, to the fact that the system of taxing grain in
public elevators and warehouses resulted in evasions and want
of equality in taxation, and manifestly endeavored by the
present law to provide a more just system of taxation by im-
posing an occupation tax on operators of grain elevators and
warehouses and exempting the grain therein on May 1st from
taxation. The grain handled in public elevators and ware-
houses is a commodity in transit from place to place in the
channels of commerce, and much of it is in such transit from
state to state. In the light of these conditions, such grain
constitutes a wholly different class of property for the pur-

poses of local taxation than does grain stored in private warehouses by the producer, and affords ample distinction between them for classification for the purposes of taxation. Such classification and exemption is in harmony with the constitutional amendment providing for "reasonable exemptions," the previous legislation of the state, and the former decisions of this court on the subject.

We are of the opinion that the trial court properly denied the motion to supersede the writ of *certiorari,* and the order must be affirmed.

*By the Court.*—It is so ordered.