STATE EX REL. BLOCH BROTHERS COMPANY, Appellant, vs. TIESBERG, as Clerk of Board of Review, etc., Respondent.

*May 12—June 18, 1928.*

For the appellant there were briefs by *Olin & Butler,* and oral argument by *B. H. Stebbins,* all of Madison,

For the respondent there was a brief by *G. W. Blanchard,* city attorney, and *Stanley W. Slagg,* of counsel, both of Edgerton, and oral argument by *Mr. Blanchard.*

ROSENBERRY, J. The question presented here arises upon the following state of facts: Prior to May, 1925, Bloch Bros. Company, a Wisconsin corporation, owned six warehouses in Edgerton and leased all or portions of others in Edgerton and Stoughton. Prior to that date the Wisconsin corporation stored tobacco in these warehouses and processed and stemmed it. In May, 1925, the present Delaware corporation, Bloch Bros. Company, was organized, and about the same time the Tobacco Warehouse Corporation, also a Delaware corporation, was organized in order to furnish a suitable method of financing the largely increased volume of business. The Warehouse Corporation purchased the warehouses and leases from the Wisconsin corporation, together with machinery and equipment, for $82,420.86, the price being based upon an appraisal by the American Appraisal Company. It then engaged in the business of storing tobacco for Bloch Bros. Company and others, issuing negoti-

able warehouse receipts therefor, which are used by Bloch Bros. Company as collateral for bank loans. Bloch Bros. Company, the Delaware corporation, purchased for cash the tobacco, automobiles, and facilities of the Wisconsin company. Later all of the debts of the Wisconsin corporation, Bloch Bros. Company, were paid, its assets liquidated, and it was dissolved.

The present Delaware corporation, Bloch Bros. Company, rents from the Tobacco Warehouse Corporation for $250 per month the warehouse in Edgerton used for the processing of tobacco, and made an agreement with the Warehouse Corporation whereby the latter obligated itself to furnish whatever space might be required for the storage of the tobacco of Bloch Bros. Company, at the rate of four cents per month per case or bale and one cent per month per bundle of tobacco. These rates enabled it to do a profitable business. It has also furnished warehouse facilities to others, its main business being, however, the storage of tobacco for Bloch Bros. Company.

The assessor of the city of Edgerton placed on the assessment roll 2,541,001 pounds of Connecticut and Ohio tobacco belonging to Bloch Bros. Company, which was on May 1, 1927, in storage in the original packages in which it had been received at the warehouses of the Tobacco Warehouse Corporation in the city of Edgerton. Bloch Bros. Company also had 2,962,257 pounds of tobacco, of which 1,007,192 pounds was Wisconsin tobacco in the original packages, and the rest Wisconsin and foreign tobacco that had been processed and thus was not in the original packages, all stored in the warehouses of the Tobacco Warehouse Corporation.

No question is raised here as to the validity of the assessment of the Wisconsin tobacco or any of the processed tobacco. There was a hearing before the board of review. The entire assessment, including the 2,541,001 pounds of

Connecticut and Ohio tobacco in the original packages, was affirmed by the board of review.

The statutes applicable are as follows:

Sec. 70.07. "Taxes shall be levied upon all property in this state except such as is exempted therefrom."

Sec. 70.09 defines personal property . . . and includes

"All goods, wares, merchandise, chattels and effects, of any nature or description, having any real or marketable value, and not included in the term 'real property' " as defined in sec. 70.08.

Sec. 70.13 prescribes where personal property shall be assessed.

"(1) All personal property shall be assessed in the assessment district where the same is located or customarily kept except as otherwise specifically provided. Personal property in transit within the state on the first day of May shall be assessed in the district in which the same is intended to be kept or located, and personal property having no fixed location shall be assessed in the district where the owner or the person in charge or possession thereof resides. . . ."

Sec. 70.16 relates to leaf tobacco.

"Leaf tobacco, whether in the hands of the grower or dealer, shall be listed and valued by the assessor of the assessment district where the same is located on May first of the year in which the assessment is to be made, and no tobacco then located in this state shall be considered in transit unless it has actually been started on its journey or has been delivered and consigned to a common carrier for shipment. . . ."

Under these statutes it is clear that all property within the state on the first of May was required to be assessed to the owner or some person in possession thereof, whether the same was in transit or not. The result was that a great deal of property was withheld from shipment and did not find its way into the state until after May 1st in each year, contrary

to the ordinary course of business. For this reason, Wisconsin citizens lost warehouse business, insurance business, cartage business, and other benefits which would naturally have accrued to them. The matter was under consideration by an interim committee of the legislature of 1925. A part of that committee's report is as follows:

"We also recommend a radical change in the taxation of merchandise and other goods stored in commercial storage warehouses. As the law now stands, the tax upon such personal property is levied upon and collected from the storage warehouse, which then tries to recover the tax from the owner. This practice seriously interferes with the business of the warehouses, because there is a period of half a year after the tax is assessed when the goods may be withdrawn before the amount of the tax is known. Still worse is the situation as regards merchandise consigned to warehouses to be later distributed to purchasers from these warehouses, which has become a large business in all lake ports. In this field the warehouses in Wisconsin are in competition with storage warehouses in neighboring states; and if such merchandise in Wisconsin warehouses is taxed, these warehouses must either stand for the tax or they will lose this business altogether. What we suggest to remedy these difficulties is that merchandise brought to a commercial storage warehouse direct from railroad or steamship lines and put into storage in the original package shall be considered as being in transit and shall not be taxed until withdrawn from the warehouse. We further recommend that other goods stored in storage warehouses be assessed against the owner, provided that the warehouse furnishes to the assessor a list of all such goods, with a copy of the warehouse receipt, showing the value thereof, and the name and address of the owner."

Pursuant to that recommendation the legislature enacted ch. 21 of the Laws of 1927 (sub. (7) of sec. 70.13 and sec. 70.205, Stats. 1927). A new exemption was created by adding to sec. 70.13, sub. (7), as follows:

"Merchandise placed in storage in the original package in a commercial storage warehouse shall while so in storage be considered in transit and not subject to taxation."

Sec. 70.205 provides for the assessment to owners of goods stored in warehouses. Sub. (7) is clearly a limitation upon the provisions of sec. 70.13 already quoted and created a new exemption.

There can be no serious controversy that the tobacco stored was not goods, wares, and merchandise within the meaning of this section, but it is claimed that the warehouse in which the goods were stored was not a commercial storage warehouse. It is manifest that this act cannot be construed with reference to a particular situation. It is a general law enacted by the legislature to relieve what it thought to be a hardship upon warehousemen in the state of Wisconsin. Its clear purpose was to induce the bringing into Wisconsin of goods which would otherwise remain without the state by reason of its taxation laws. Thus the state would lose not only the tax but its citizens would lose the resulting benefits.

It appears from the case that the Tobacco Warehouse Company has brought itself within the provisions of ch. 119 relating to the existence of warehouse receipts. That act does not define warehouse. A warehouseman is defined as "a person lawfully engaged in the business of storing goods for profit."

Ch. 126 deals with the grain and warehouse commission. Sec. 126.06, among other things, provides:

"Any elevator or warehouse in any other city in this state (other than Superior) doing business for a compensation which is operated in a manner described in this section and which issues warehouse receipts for grain received or stored may, upon request, be declared public warehouses by the grain and warehouse commission."

While the terms of this act relate to grain, it is quite apparent that the legislative thought was that a warehouse which issues negotiable receipts and stores grain for profit might properly be declared to be a public warehouse. It is quite probable that because of this connotation the term "pub-

lic warehouse" was not employed in sub. (7) and the term "commercial storage warehouse" was substituted therefor.

The warehouseman in this case accepts and stores merchandise for profit and against the merchandise so stored issues negotiable warehouse receipts, and transacts such business for the general public, so far as its warehouse capacity permits. If this is not a commercial storage warehouse it would be difficult to find one answering that description. The result in the city of Edgerton probably is one not anticipated either by the local authorities at Edgerton or perhaps by the legislature. We cannot make over the law to fit a local situation. It must be construed as it applies to the state generally. Clearly the merchandise in question was merchandise stored in a commercial storage warehouse and therefore exempt under the statute. The merchandise in controversy, being 2,541,001 pounds of tobacco of the value of $177,850, was not subject to assessment by the assessor of the city of Edgerton, and the board of review was in error in holding it assessable.

In this case there can be no basis for a claim that the reorganization of the affairs of the Wisconsin corporation known as Bloch Bros. Company was a subterfuge for evading the law. The whole arrangement was already in existence when the law was enacted.

*By the Court.*—Judgment appealed from is reversed, and cause remanded for further proceedings according to law.