NASH SALES, INC., and another, Respondents, vs. CITY OF MILWAUKEE and others, Appellants.

*February 5—March 5, 1929.*

282

For the appellants there was a brief by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Mattison* and *Mr. Bump.*

For the respondents there was a brief by *Rix, Barney & Kuelthau,* attorneys, and *Carl B. Rix,* of counsel, all of Milwaukee, and oral argument by *Carl B. Rix.*

STEVENS, J.   (1)  The universal rule of taxation is that "taxes shall be levied upon all property in this state except such as is exempted therefrom."   Sec. 70.07 of the Statutes.  The single question presented is whether the automobiles here in question are exempted from taxation by sub. (7) of sec. 70.13, which provides that: "Merchandise placed in storage in the original package in a commercial storage warehouse shall while so in storage be considered in transit and not subject to taxation."

In ascertaining the legislative intent this statute must be read in connection with all other statutory provisions relating to taxation, as well as in the light of the report of the

interim committee which framed this statute. In its report this committee said: "We also recommend a radical change in the taxation of merchandise and other goods stored in commercial storage warehouses. As the law now stands, the tax upon such personal property is levied upon and collected from the storage warehouse, which then tries to recover the tax from the owner. This practice seriously interferes with the business of the warehouses, because there is a period of half a year after the tax is assessed when the goods may be withdrawn before the amount of the tax is known. Still . worse is the situation as regards merchandise consigned to warehouses to be later distributed to purchasers from these warehouses, which has become a large business in all lake ports. In this field the warehouses in Wisconsin are in competition with storage warehouses in neighboring states, and if such merchandise in Wisconsin warehouses is taxed, these warehouses must either stand for the tax or they will lose this business altogether. What we suggest to remedy these difficulties is that merchandise brought to a commercial storage warehouse direct from railroad or steamship lines and put into storage in the original package shall be considered as being in transit and shall not be taxed until withdrawn from the warehouse. We further recommend that other goods stored in storage warehouses be assessed against the owner, provided that the warehouse furnishes to the assessor a list of all such goods, with a copy of the warehouse receipt, showing the value thereof, and the name and address of the owner."

It will be noted that the committee said nothing about the exemption of property manufactured or produced in this state. Its purpose was to aid Wisconsin warehousemen who were "in competition with storage warehouses in neighboring states." Manifestly this competition must have been for the storage of goods originating outside of the state of Wisconsin.

It is apparent that neither the legislature nor the committee intended to exempt property merely because it was stored in a commercial warehouse, because the bill drafted by the committee which enacted this sub. (7) also created sec. 70.205 of the Statutes, which expressly provided for the taxation of property stored in such warehouses. Ch. 21, Laws of 1927.

It is also apparent that the legislature did not intend to exempt property merely because it was in transit in Wisconsin on the day when property is assessed for taxation, because sub. (1) of sec. 70.13 of the Statutes provides for the taxation of all property in transit on May 1st of any year.

Under the statutes as they existed prior to the enactment of the statute here in question, "it is clear that all property within the state on the 1st of May was required to be assessed to the owner or some person in possession thereof, whether the same was in transit or not. The result was that a great deal of property was withheld from shipment and did not find its way into the state until after May 1st in each year, contrary to the ordinary course of business." The purpose of the statute under consideration "was to induce the bringing into Wisconsin of goods which would otherwise remain without the state by reason of its taxation laws. Thus the state would lose not only the tax, but its citizens would lose the resulting benefits." *State ex rel. Bloch Bros. Co. v. Tiesberg,* 196 Wis. 419, 220 N. W. 217, 218–219.

This purpose to limit the application of this exemption statute to goods shipped from without the boundaries of the state for storage in commercial warehouses is also made manifest by the use of the phrase "in the original package." While this phrase is given other meanings, when used where the text discloses such intent, it is ordinarily limited to shipments that come from another state or country. That

was the meaning given it by Chief Justice MARSHALL in *Brown v. Maryland*, 12 Wheat. 419, 6 Lawy. Ed. 686, where the doctrine of the original package had its origin.

Before the passage of this act automobiles shipped to Wisconsin from another state, even though unsold and still in the original package, were subject to taxation by the state because "they had arrived at their destination, were at rest in the state," and "were enjoying the protection which the laws of the state afforded." So long as they "were taxed without discrimination, like all other property, . . . the tax did not amount to a regulation in the sense of the constitution, although its levy might remotely and indirectly affect interstate commerce." *American Steel & Wire Co. v. Speed*, 192 U. S. 500, 521, 24 Sup. Ct. 365, 48 Lawy. Ed. 538, 547. The power to tax articles of interstate commerce after they have come to rest under the protection of the laws of the state presents an entirely different question than that presented by the exercise of the power of the state to regulate the sale of articles of interstate commerce. *McDermott v. Wisconsin*, 228 U. S. 115, 136, 33 Sup. Ct. 431, 57 Lawy. Ed. 754, 768.

The state could not tax the subjects of interstate commerce while still in transit in the course of such commerce, as such a tax would impose a burden on interstate commerce, which would amount to a regulation thereof.

Merchandise which has from the time of its origin to the time of its storage always been within this state, even though in the original package, is a part of the mass of the property of the state which has always been subject to taxation, while in transit as well as when in storage. The act evidences no intent to change that rule. What the legislature did by the passage of this act was to declare that goods which are the subject of interstate commerce shall "be considered in transit" and therefore "not subject to taxation" while in storage in the original package in commercial warehouses.

By the employment of the legal fiction that the goods were still in transit in interstate commerce, the legislature extended the time of transit that must elapse before the goods ceased to be the subject of interstate commerce, during which time the state could not subject goods to taxation without burdening interstate commerce.

(2) This classification of property for the purposes of taxation so as to exempt property which has been the subject of interstate commerce, while taxing that which was produced in and shipped from some point in this state, is not an invalid discrimination against the producers of Wisconsin goods. The question of what property shall be taxed and what exempt from taxation is primarily a legislative question.

The constitutional mandate is that "the rule of taxation shall be uniform, and taxes shall be levied upon such property . . . as the legislature shall prescribe." Art. VIII, sec. 1, Wis. Const. If we leave out superfluous words the mandate is: " 'The rule of taxation shall be uniform . . . upon such property as the legislature shall prescribe.' . . . The right of the legislature to prescribe what property shall be taxed includes the right to prescribe what shall not be taxed. The right of choosing some from the multiplicity of kinds, classes, species, use and ownership of property in the state, and the rejection of others, includes the absolute power to discriminate between what shall be chosen and what rejected, except in so far as it may be limited by the requirement of a uniform rule." *Wis. Cent. R. Co. v. Taylor County,* 52 Wis. 37, 92, 8 N. W. 833.

"It is uniformity of rule, and not uniformity of subjects, which the constitution requires." *Black v. State,* 113 Wis. 205, 217, 89 N. W. 522. "The uniformity and equality thus enjoined . . . does not require that all property or all persons shall be treated exactly alike, but permits separation of either into classes of property or of persons simi-

larly conditioned or situated, having characteristics legitimately distinguishing the members of one class from those of another in respects germane to some general and public purpose and object of the particular legislation." *State v. Whitcom,* 122 Wis. 110, 118–119, 99 N. W. 468.

"Under our constitution, it must be remembered, there is the amplest power on the part of the legislature to exempt an entire class of property from taxation, and to make such class very narrow, even excluding from the benefits accorded to the members thereof those owning property of the same general class, so long as the character of that owned by those of the sub-class is so far different from that owned by others, as, within the boundaries of reason at least, to suggest necessity or propriety, having regard to the public good and the constitutional object to be attained, and limitations in respect thereto, of substantially different legislative treatment. . . . The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason." *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 642–643, 655, 108 N. W. 557.

"The amount of exemption is peculiarly a subject for the exercise of legislative discretion. In our state the right to make reasonable exemptions in tax laws has always been recognized, and, of course, the legislature must be the first judge as to the proper amount thereof. No court will assume to say that the legislature is wrong in its judgment as to the amount, unless such error appears so clearly as to leave no reasonable doubt." *Black v. State,* 113 Wis. 205, 220, 89 N. W. 522.

The property of the Frint Motor Car Company could not have been taxed until it had ceased to be a subject of interstate commerce and had come to rest in this state. We cannot say that in exempting this property the legislature has overreached the bounds of reason. Nor can we say that the

reasons given by the interim committee for the enactment of this exemption statute are not such as to suggest the necessity and propriety of its enactment, having regard to the public good resulting therefrom. Before this act was passed Wisconsin could not tax property that was kept out of the state until after the date when taxes were assessed and its citizens lost the "warehouse business, insurance business, cartage business, and other benefits which would naturally have accrued to them." *State ex rel. Bloch Bros. Co. v. Tiesberg,* 196 Wis. 419, 220 N. W. 217, 218. At least the loss which would otherwise come to the citizens of Wisconsin supplies such a basis for the classification and exemption provided for in this statute that the court cannot say that the legislature has exceeded the power vested in it by the constitution or that it has invaded the rights guaranteed to citizens of this state by the fundamental law of the state and of the nation.

The situation is not unlike that presented in *State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 160 N. W. 1077, where it was contended that the exemption of grain in public elevators and warehouses was a discrimination against citizens of this state whose grain was stored on farms and in private warehouses and was subject to taxation. It was held that the classification and resulting exemption did not violate any principle of legitimate classification, and that grain in public warehouses was a commodity in the channels of commerce which constituted "a wholly different class of property for the purposes of local taxation than does grain stored in private warehouses by the producer, and affords ample distinction between them for classification for the purposes of taxation." *State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 83–84, 160 N. W. 1077.

We conclude that the statute exempts the property of the Frint Motor Car Company from taxation while in the commercial warehouses in the original package, but that it does

not exempt the property of the Nash Sales, Inc. It follows that the order overruling the demurrer to the complaint so far as the relief demanded by the Frint Motor Car Company is concerned must be affirmed, and that the order overruling the demurrer so far as the Nash Sales, Inc. demands relief must be reversed, and the cause remanded for further proceedings.

*By the Court.*—So ordered.