MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant, vs. TAX COMMISSION and others, Respondents.

*March 8—April 5, 1932.*

524

526

528

530

For the appellant there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw*.

For the respondents there was a brief by the *Attorney General* and *F. C. Seibold* and *Samuel Bryan,* assistant attorneys general, and oral argument by *Mr. Seibold* and *Mr. Bryan*.

FRITZ, J. The trial court's opinion, as set forth above, fairly and accurately states the issues as well as the ultimate facts which the evidence establishes, and the court's reasons for the conclusions and the judgment from which appellant has appealed.

In appellant's brief it is stated that the issues on this appeal are essentially matters of law; and that the questions involved are as follows:

"Does the exemption of ch. 68, Laws of 1931, which, from its very title, is related to ch. 22, Laws of 1931 (by which the four-cent gas tax was imposed), extend to all vehicles for the operation of which the four-cent gas tax is paid, or does it contemplate that a utility operating motor vehicles shall pay both taxes?

"Is the operation of ch. 22, Laws of 1931, suspended as to the plaintiff by reason of the fact that, prior to the imposition of the four-cent gas tax and the related exemption of motor vehicles, plaintiff acquiesced in the assessment of the general property tax on all of their motor vehicles by the Tax Commission under ch. 76, Wisconsin Statutes?"

In seeking to maintain that the exemption created by ch. 68, Laws of 1931, does extend to all gasoline motor vehicles operated by appellant, it contends that—

"(a) The appellant's property is made subject to property taxation by ch. 70, Stats., which is now amended so as to create the exemption. Ch. 76, Stats., merely prescribes for utilities and railroads a method of assessing the general property tax which is authorized by ch. 70;

"(b) Ch. 68, Laws of 1931, exempts a class of property described according to its function and without regard to ownership;

"(c) A construction which will subject the utility-owned vehicles to both taxes is unjust and unworkable and will result in absurdities which the legislature clearly did not intend;

"(d) As construed by the trial court, ch. 68, Laws of 1931, is unconstitutional, for it denies to appellant the equal protection of the laws;

"(e) As construed by the trial court, ch. 68, Laws of 1931, is repugnant to sec. 1, art. VIII, Wisconsin constitution, which provides 'the rule of taxation shall be uniform.' "

In view of the statutes and the Tax Commission's administration and established practice thereunder, in which, so far as of moment in this case, the appellant has heretofore acquiesced, those contentions cannot be sustained.

Appellant's property is not subjected to property taxation by ch. 70, Stats. Ch. 76 provides for and prescribes much more than merely a method of assessing the property of utilities and railways for the general property tax under ch. 70. Ch. 76 specifically provides the method and manner of levying, collecting, and disbursing the taxes on the property of railways and utilities, as well as the method of the initial valuation and assessment thereof. That that is the scope of ch. 76 is demonstrated by the repeated use of such terminology as is used in the following excerpts. Thus, sec. 76.01 provides that as to such property the Tax Commission "shall

make an annual assessment . . . for the purpose of levying and collecting taxes thereon, as provided in this chapter;" sec. 76.03 (3) provides, "the place of assessment and taxation of property subject to taxation under the provisions of this chapter is fixed at the capitol of the state;" sec. 76.12 provides, "the commission shall compute and determine the average rate of taxation" throughout the state: the rate so arrived at "shall constitute the rate of taxation on the full market value of the property of the companies defined in section 76.02;" sec. 76.13 (1) provides, "the commission shall compute and levy a tax upon the property of each company defined in section 76.02, as assessed in the manner specified in sections 76.07 and 76.08, at the average rate of taxation determined as aforesaid;" sec. 76.14 provides, "all taxes levied pursuant to this chapter;" sec. 76.15 provides (reassessment), "if any tax levied under the provisions of section 76.13 shall be adjudged illegal," etc.; sec. 76.23 provides, "the taxes imposed by this chapter upon the property of the companies defined in section 76.02 shall be in lieu of all other taxes," etc.; sec. 76.24 provides, "all taxes collected from the companies defined in section 76.02 under the provisions of this chapter shall be paid to the state treasurer and become a part of the general fund for the use of the state;" and sec. 76.28 provides that the state shall retain fifteen per cent.; twenty per cent. shall be distributed to the counties; and sixty-five per cent. shall be distributed to the towns, cities, and villages in proportion to the property located and business transacted within each such town, city, and village.

Manifestly, as all matters of assessment, levy, collection, and distribution of the taxes on appellant's property are specifically provided for by ch. 76, those matters and appellant's property for those purposes are not subject to the provisions of ch. 70. In fact, appellant's property is clearly excluded from the application of ch. 70 by the provision in

sec. 70.01 that such valuation, assessment, and collection shall be made according to the provisions of this title *"unless otherwise specifically provided."* That quoted clause clearly removes from the application of ch. 70 the property, such as that of appellant, as to which the method of taxation is specifically provided for by ch. 76. It is indeed significant that, pursuant to those statutory provisions, appellant's property, including all of its motor vehicles, has been valued and assessed and taxes thereon have been levied and collected under ch. 76—and not under ch. 70—since 1926, and that that was done at appellant's instigation in the first instance, and thereafter with its acquiescence. It resulted in appellant's paying at the average state rate, which was lower than the local rates were in most of the local assessment districts in which its property was located. As a result of thus including appellant's motor vehicles in its property taxed under ch. 76, that property was not taxable under ch. 70, in view of sec. 76.23, which reads:

*"Exemption from other taxation.* The taxes imposed by this chapter upon the property of the companies defined in section 76.02 shall be in lieu of all other taxes on such property necessarily used in the operation of the business of such companies in this state, except that the same shall be subject to special assessment for local improvements. . . ."

The class of property exempted by ch. 68, Laws of 1931, is not described or to be ascertained without regard to ownership, or by mere regard to the functions of the various types of motor vehicles mentioned in that enactment. The class of property to which ch. 68, Laws of 1931, relates does not necessarily extend to all types of motor vehicles mentioned therein, regardless of whether they are a part of an owner's property which is taxed under ch. 70 as "general property of the state," or whether they are part of an owner's property which is taxed under ch. 76 as "special" property, as those

terms are defined in sec. 76.09. (See, also, sec. 76.02 (8), Stats. 1929.)

Ch. 68, Laws of 1931, is entitled:

"An act to create subsection (35) of section 70.11 of the Statutes, relating to the reconciliation of the exemption statute with the provisions of the new highway law."

Sec. 1 provides:

"A new subsection is added to section 70.11 of the Statutes to read: (70.11) (35) Every automobile, motor truck, motor delivery wagon, passenger automobile bus, motorcycle, or other similar motor vehicle, or trailer or semi-trailer used in connection therewith."

Thus by specific reference and limitation in the title, as well as in sec. 1 of ch. 68, Laws of 1931, the provision which is thereby created is to be a subsection or addition to sec. 70.11 to be known as sub. (35) thereof. Thereby it is expressly, on its face, confined to the amendment of a section of ch. 70. It does not purport to also amend ch. 76. It adds to the exemptions which theretofore existed as to such property as was taxed under ch. 70, all motor vehicles regardless of function or ownership, but it does not purport likewise to amend any section of ch. 76, and thereby afford a like exemption to property taxed under the latter chapter. It leaves unamended and unaltered the two and only provisions of ch. 76 relating to the exception or exemption from assessment and taxation thereunder of property owned by any company whose property is to be assessed and taxed under ch. 76. Those two provisions to that effect in ch. 76 and affecting that chapter are sec. 76.23, hereinbefore referred to, and sec. 76.02 (11), last sentence, which provides that "all real estate not necessarily used in operating the business of any company defined in this section, is excepted from taxation under this chapter and shall be subject to local assessment and taxation."

But for that exception as to real estate in sec. 76.02 (11), ch. 76 applies to "the property . . . of all street railway companies, of all light, heat and power companies" which shall be assessed by the Tax Commission (sec. 76.01), "and all real and personal property of the company or companies used or employed in the operation of its business . . ."— sec. 76.02 (10). Consequently, the exemption created by ch. 68, Laws of 1931, in an amendment to only sec. 70.11 of ch. 70 does not necessarily apply to any of the provisions of ch. 76 or to appellant's property, including its motor vehicles, which has been assessed and taxed as a unit or single item under ch. 76—sec. 76.03 (2). But even if, by reference or otherwise, terms had been used because of which some ambiguity had arisen, the rule would be applicable that an exemption from taxation to be valid must be clear and express; that all presumptions are against it; and that it should not be extended by implication. *Weston v. Shawano County,* 44 Wis. 242, 257; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 562, 63 N. W. 746; *Yates v. Milwaukee,* 92 Wis. 352, 358, 66 N. W. 248; *Gymnastic Asso. v. Milwaukee,* 129 Wis. 429, 434, 109 N. W. 109.

Appellant contends that if the exemption created by ch. 68, Laws of 1931, is allowable only as to motor vehicles taxed under ch. 70, Stats., and not also as to those taxed under ch. 76, Stats., then ch. 68, Laws of 1931, is repugnant to sec. 1, art. VIII, Wis. Const.; and that it is also unconstitutional because it would deny to appellant the equal protection of the laws. In this connection it is contended that the mere fact that a motor vehicle is owned by a company, the property of which is taxed under ch. 76, Stats., by reason of its operating a street railway or public utility, but which does not use such vehicle in the performance of any duty that devolves upon it as such railway or utility, does not afford any reasonable basis for valid classification by reason of which such company can be denied an exemption which would

otherwise be allowed to an owner whose property is taxed under ch. 70. In relation to the last contention, it would probably suffice, under the facts in this case, to say that although some of appellant's motor vehicles are used in operations which it could not be compelled to perform in conducting its utility or railway, all of them are used either for its own convenience or economy in performing the required operations or acts incidental thereto; or as supplementary or auxiliary, as feeders of business or otherwise, to its railway system, or in lieu of extensions thereof, or to exclude future competition in the territory which it has been serving;—all with the expectation of thereby increasing, or at least maintaining, its income from operations which it is required to perform. That expectation undoubtedly induced appellant to engage in such additional operations; and due consideration given to those circumstances likewise induced the Tax Commission to include all of the motor vehicles, used by appellant in operating its business, in the unit assessment of its property at a total valuation and without allocating any specific value to such vehicles.

In relation to sec. 1, art. VIII, Const., which provides that "The rule of taxation shall be uniform, and taxes shall be levied upon such property . . . as the legislature shall prescribe," the rule is well established that uniformity in the rule of taxation does not require uniformity as to the subjects of taxation or the subjects as to which exemptions are provided. In *Wis. Cent. R. Co. v. Taylor County,* 52 Wis. 37, 89, 8 N. W. 833, this court said:

"Our constitution contains no express provision in regard to exemptions from taxation. How far is the legislative power restrained upon that subject by implication? The only provision relied upon is the section already quoted: 'The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe.' Of course, every exemption of property from taxation necessarily increases the burden of taxation on other property. It is urged

with much force, therefore, that uniformity in the rule of taxation requires uniformity as to the subjects of taxation. But it is very manifest that no such uniformity has ever existed in the state, which indicates a very decided conviction the other way. The statute of 1849, ch. 15, sec. 4, which was adopted immediately after the constitution, in addition to exempting public property from taxation, also exempted '(3) All personal property exempt by law from execution, not exceeding in value $200; (4) the personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied by them for the purposes for which they were incorporated; (5) all houses of public worship, and the lots on which they are situate, and the pews or slips and furniture therein, every parsonage, and all burial grounds, tombs and rights of burial; . . . (6) all public libraries, and the real and personal property belonging to or connected with the same; . . . (8) the personal property of persons who, by reason of infirmity, age and poverty, may, in the opinion of the assessors, be unable to contribute towards the public charges.' Similar provisions have been in force ever since.

"It is manifest that much of the property which under that section would be exempt from taxation if owned by one man, would nevertheless be subject to taxation if owned by some other. If the uniform rule requires uniformity in the subjects of taxation, how could it ever be that the same horse or cow would be exempt when owned by A, but taxable the moment the same became the property of B? Or, upon that theory, why should a house and lot, owned and occupied by a banker, cease to be liable for taxes merely because it became occupied by a minister as a parsonage? Such discrimination would not be traceable to any difference in the property, or subjects of taxation, but rather to the circumstances or business of the owner or occupant. It cannot be maintained that all property of a given class or kind shall be taxed by a uniform rule, while it is conceded that a portion of the same class or kind may be exempt. The very moment it is conceded, for instance, that chairs or bedsteads owned and used as furniture by one man are exempt, but that like articles so

owned and used by another are subject to taxation, then we are compelled to admit that every kind, class, or species of property may, in the discretion of the legislature, be divided up, and a part made subject to taxation, and the other part exempt from taxation. . . .

"The legislature has the exclusive power to designate the property which shall be subject to taxation, and to prescribe a rule or law by which the owners of such property are forced to contribute to the public burdens, limited only by the requirement that the rule so prescribed shall be uniform. Uniformity of rule is entirely different from uniformity of subjects to which the rule is applicable. Most general laws are uniform rules, but the diversities in the subjects to which they apply are innumerable. In determining just what the rule of uniformity shall be in taxation, and how it shall be applied, there is a wide field for legislative discretion. . . .

"We therefore conclude that . . . (7) Accordingly, taxes can only be levied upon such property as the legislature shall prescribe, and then only by a uniform rule, but it is the 'rule,' and not the property, which the constitution thus requires to be 'uniform.' . . . (9) The power to prescribe what property shall be taxed necessarily implies the power to prescribe what property shall be exempt. (10) While the lands described were held in trust for the building of the proposed line of road now owned by the plaintiff, and hence not subject to taxation, the legislature had the power, in furtherance of that object and in execution of the trust, to exempt the same from taxation for a term of years; and such power, having been exercised, could, within the discretion of the legislature, be renewed by granting an extension."

Those conclusions were approved as follows in *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 642, 108 N. W. 557:

"Under our constitution, it must be remembered, there is the amplest power on the part of the legislature to exempt an entire class of property from taxation, and to make such class very narrow, even excluding from the benefits accorded to the members thereof those owning property of the same general class, so long as the character of that owned by those of the subclass is so far different from that owned by others,

as within the boundaries of reason, at least, to suggest necessity or propriety, having regard to the public good and the constitutional object to be attained, and limitations in respect thereto, of substantially different legislative treatment. Few cases that can be found have gone further on that line than *Wis. Cent. R. Co. v. Taylor County,* 52 Wis. 37, 8 N. W. 833. There, as we have seen, a very small subclass of real estate, a class so small as to be confined to one owner, was deemed sufficiently different from realty generally to warrant the legislature in exempting it from taxation. It is not likely, as we have before indicated, that this court will soon go further on that line than it did in that case. Certainly there is no call therefor in the case before us. In the particular field covered by the ultimate result there reached, the case is distinguished for definiteness, and has been frequently referred to with approval, here and elsewhere. *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468; *Black v. State,* 113 Wis. 205, 89 N. W. 522; *Kingsley v. Merrill,* 122 Wis. 185, 99 N. W. 1044; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 42, 69 N. W. 796."

In addition to the cases cited see *State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 82, 160 N. W. 1077; *Nash Sales, Inc. v. Milwaukee,* 198 Wis. 281, 224 N. W. 126.

It follows that if there is some basis for classification by reason of which appellant's property used in conducting its utility and street and interurban railways, including its motor vehicles, is assessed and taxed in ch. 76, Stats., instead of ch. 70, there is no unlawful discrimination. We do not understand that appellant is challenging the principles recognized and applied in *Chicago & N. W. R. Co. v. State, supra.* In that case this court sustained the original enactment of the statutes, which now constitute ch. 76, and which then related only to the taxation of the property of railroad companies. The validity of the law was challenged under the Fourteenth amendment of the federal constitution as well as sec. 1, art. VIII, Wisconsin constitution. In addition to excerpts

hereinbefore noted from the opinion in that case, the following are in point:

"In working out the supremely complex problem of how best to tax railway property under the constitutional rule of uniformity, a problem which has vexed legislatures and courts throughout the country for fifty years or more, as we have before indicated, the legislature has a wide discretion. The necessity for treating railroad property differently from general property as to mere method of attaining the constitutional object is manifest. That necessity implies more than mere permission; it implies a constitutional command. All reasonable effort to respond to that command, instead of violating the constitutional rule, promotes the very equality it was designed to secure. (Page 652.) . . .

"Reference is made as to the facts as to street railway property, and particularly that of interurban railroads operated by electricity, and some other property not belonging to railway companies, having to do with transportation of some sort, being taxed by a different method than ordinary railroad property, as violating the constitutional rule of uniformity. That seems to be sufficiently answered by what is said elsewhere in this opinion, as to the right of the legislature to classify property under sec. 1, art. VIII, some to be taxed and some to be exempt, so long as each particular class or subclass has real distinctions, reasonably specializing it as to other property. The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason. Again, we point to *Wis. Cent. R. Co. v. Taylor County*, 52 Wis. 37, 8 N. W. 833, as an indication of the scope of that power as here recognized. Applying the circumstances there held to warrant specializing as to part of a subclass of property owned by a single corporation as a test here, the legitimacy of that as between electric railway property and other property mentioned, and ordinary railway property, becomes at once apparent. (Pages 654, 655.) . . .

"It finds its justification in the right of classification under constitutional equality clauses by reason of there being real differences between the two kinds of property, which right,

as we have seen all through our discussion, applies to sec. 1, art. VIII, so far as relates to the division between property to be taxed and property not to be taxed. (Page 655.)"

Since the decision in *Chicago & N. W. R. Co. v. State, supra,* the scope of the letter of the statutes then under consideration has been extended so as to include on the one hand, in addition to railroad properties, also the properties of street railways and heat, light, and power companies as defined in sec. 76.02 (8), and, on the other hand, not only the property which such a company uses "in the operation of its railroad, street railway, or other property," but also the property which it uses "in the conduct of its business" (excepting only that real estate which is not necessarily used in operating the business of any such company is to be excepted from property taxed under ch. 76 and is to be taxed under ch. 70, as heretofore stated), sec. 76.02 (10). Manifestly, the provisions of ch. 76, Stats. 1931, do extend the scope of the statutes which were held valid in *Chicago & N. W. R. Co. v. State, supra,* and it would be necessary to pass upon the question of whether or not the subsequent legislation has exceeded the constitutional limitations discussed in that case, if either of the parties were now contending that the Tax Commission erred in including, since 1926, the property, as to which exemption is now claimed, in the unit assessments of appellant's property which have been made under ch. 76, at appellant's instigation. The question of whether or not it is within the power of the legislature, in classifying property for taxation, to include in the class to which ch. 76 applies, property which concededly is being used for purposes wholly foreign to the transportation or utility business of a company taxed under ch. 76, has not been raised or discussed by any of the parties to this litigation; and it is not now necessary to refer to that problem further than to suggest that it merits due consideration by the legislature and the Tax Commission, as well as, possibly, the Public Service Commission,

in connection with their consideration of the problems with which they are repeatedly confronted in relation to the taxation and regulation of railways, public utilities, and such motor-vehicle transportation service as is subject to regulation under ch. 194, Stats. If the manner in which appellant actually used the property in question in connection with and in furtherance of its transportation and utility business rendered it practically impossible to separate any element of that property from its other holdings, which were included in the unit assessment, that condition may afford sufficient basis, from a constitutional standpoint, for the legislature, as well as the Tax Commission in its administration under legislative commands, to treat that property differently from "the general property of the state" in classifying it for assessment and taxation, as well as for exemption or non-exemption from taxation. As far as this case is concerned, it suffices to say that as long as that property is in fact assessed and taxed under ch. 76 it is to be treated, for purposes of taxation and exemption, as special property and not as part of "the general property of the state," which is taxed under ch. 70; and, consequently, the exemptions as to "general property" taxed under ch. 70 are inapplicable.

There may be some basis for appellant's contention that the failure to extend the exemption from taxation of motor vehicles to those taxed under ch. 76 as well as to those taxed under ch. 70 will unjustly subject those taxed under ch. 76 to both the property tax and the increased gasoline tax prescribed by ch. 22, Laws of 1931. In so far as that result may be unjust, the following statement in *Delaware Railroad Tax*, 18 Wall. (85 U. S.) 206, 231, is in point, to wit:

"The state may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest

in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the state; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction."

However, it is urged that double property taxation results if motor vehicles taxed under ch. 76, Stats., are also subjected to the increased gasoline tax; and that if so construed the statute is unworkable and contrary to what the legislature clearly intended. That might be sound if the gasoline tax were in fact a property tax. However, "there is a presumption against the existence of an intention to impose such double taxation, until overcome by the express language of the statute." *Kingsley v. Merrill,* 122 Wis. 185, 200, 99 N. W. 1044. The gasoline tax is not imposed upon property. On the contrary, it is imposed by specific language upon "the owners and operators" of motor vehicles used upon the public highways "for the privilege thereof." (Sec. 78.01, Stats., as amended by ch. 22, Laws of 1931.) It is clearly a privilege tax. Consequently, no double property taxation results because of the fact that appellant must pay the gasoline privilege tax, although its motor vehicles, as a part of the property of the company, are also made taxable as a unit whole under ch. 76. The two taxes are wholly different in character and the burdens they are intended to discharge, and hence do not result in unconstitutional double taxation.

The significance or bearing which appellant ascribes to the second question which it contends is raised on its appeal is not apparent. Of course no prior practice or custom in assessing property for taxation can suspend the operation of subsequent legislation. The operation of ch. 22, Laws of 1931, is not suspended by any such practice. It is probably true that the justification for the provision in ch. 22 which increased the gasoline tax was the proposed exemption of motor vehicles from the property tax. However, there was

no express provision to that effect in ch. 22. The only indication of such an intention is the provision in sec. 3 of ch. 22, creating sec. 20.49 (2) (a), Stats. 1931, which provides that there shall be distributed by the highway commission "on February 1, 1932, and annually thereafter, *to each town, village, and city,* a privilege highway tax in an amount as herein set forth *in lieu* of the *general property tax heretofore assessed* on motor vehicles." It will be noticed that the substitution provided for by that enactment is only in lieu of "the general property tax." That provision does not also provide for such substitution for the "special property" tax. (The distinction between those terms appears from the definitions in sec. 76.09, Stats. 1931, as hereinbefore stated.) However to remove all doubt as to whether it was intended by sec. 20.49 (2) (a), Stats., to relieve any motor vehicles from property taxation, ch. 68, Laws of 1931, was enacted. Thus an express provision for exemption was enacted, but, in keeping with sec. 20.49 (2) (a), that the distribution therein provided for was in lieu of the general property tax, the provision creating the exemption was enacted as an amendment to only sec. 70.11, and thereby its effect was confined to the exemption of motor vehicles assessed and taxed as part of "the general property" under ch. 70, as hereinbefore stated. Thus, the operation of sec. 20.49 (2) (a), Stats. 1931, is restricted by the express terms thereof and the terms of ch. 68, Laws of 1931, to such motor vehicles as are taxed under ch. 70; and there is no suspension of the operation of ch. 22, Laws of 1931, solely by reason of prior practices of the Tax Commission.

*By the Court.*—Judgment affirmed.